JOSEPHINE B. CRUTCHER v. R. DAVID NOEL

No. 16

(Filed 25 January 1974)

1. Trial § 11— scope of jury argument

Counsel may argue all the evidence to the jury, with such inferences as may be drawn therefrom; but he may not "travel outside the record" and inject into his argument facts of his own knowledge or facts not included in the evidence.

2. Trial § 11— jury argument — inviting retaliatory argument

While there are occasions when counsel, in his remarks to the jury, may invite responsive or retaliatory argument by opposing coun-

sel, such invitation does not grant opposing counsel *carte blanche* license to travel outside the record or beyond the bounds of proper response and retaliation.

3. **Physicians, Surgeons, Etc. § 11; Trial § 11— malpractice — jury argument — statement that medical witnesses would have testified certain way**

    The trial court in a malpractice action committed prejudicial error in permitting defense counsel to argue to the jury that twelve doctors, who were listed as defense witnesses but did not testify, would have testified to the same thing that his client had testified to since such argument offered facts outside the record which effectively buttressed his client's testimony on the crucial issue of the case without granting plaintiff his rights of confrontation and cross-examination.

APPEAL by plaintiff from *Godwin, S. J.*, at 17 April 1972 Session of GRANVILLE Superior Court.

Civil action seeking damages for permanent injuries allegedly caused by negligent treatment and care of plaintiff by defendants, Dr. R. David Noel, Dr. Charles B. Finch, the Granville Hospital Association, Inc., June Schmitt, Ursula Hughes and Betsy Tant.

Before trial, plaintiff entered a voluntary dismissal of the action as to defendants Schmitt, Hughes and Tant. At the close of plaintiff's evidence, the trial judge directed a verdict in favor of defendants, Dr. Finch and Granville Hospital Association, Inc. The motion for a directed verdict as to Dr. R. David Noel was denied.

In her Complaint, plaintiff alleged that Dr. Noel was negligent in that he: (1) failed to take proper precautions for the operation on plaintiff based on the knowledge and information available to him concerning plaintiff; (2) failed to conduct the operation in a proper and skillful manner; (3) applied a pneumatic tourniquet to plaintiff's right leg under improper pressure and allowed it to remain for such a period of time to cut off the circulation in plaintiff's leg; (4) failed to adequately follow plaintiff's progress in her operative aftercare.

On 10 April 1972 at final pre-trial conference, Judge Godwin signed an Order which included a list of twelve physicians who might be offered as witnesses by defendant at trial.

Plaintiff's evidence in support of her allegations, including the testimony of Dr. Noel, who was called as an adverse witness, in brief summary, tended to show:

Plaintiff was admitted to Granville Hospital on 20 January 1967 with a two-week history of chest pain and pain in her right knee. Plaintiff's admitting physician consulted with defendant regarding plaintiff's knee condition. Defendant examined plaintiff, and after a steroid injection failed to relieve the pain, suggested an operation. On 3 February 1967, defendant performed an arthrotomy on plaintiff's right knee, removing some tissue. Defendant closed the incision, dressed the wound, and applied an Ace bandage on plaintiff's leg. During the operative procedure, a Richard's tourniquet was applied in order to cut off the blood supply to the leg. Thereafter plaintiff developed a puffiness in the inside of her right thigh. The records contain the following reference to plaintiff's condition: Final Diagnosis—"necrosis of skin and subcutaneous tissue due to pressure of cuff, etiology undetermined." Defendant subsequently opened the affected area and inserted a drain; however, approximately three weeks after the operation, discolorations appeared on plaintiff's leg. Defendant debrided the discolored tissue and closed these areas. Approximately one week later the areas surrounding two of the incisions appeared to be again darkening. Plaintiff was then transferred to the Medical College of Virginia where she underwent several operations in attempts to effect skin grafts on the open wounds on her leg. These attempts were unsuccessful, and on 29 September 1969, plaintiff's right leg was amputated.

Plaintiff testified that after defendant performed the operation, she was in severe pain and could not move her leg or toes. She related the following conversation with Dr. Noel: " 'Dr. Noel, what on earth is wrong with my leg?' He said that when he operated on me, he tied the tourniquet too tight. 'I knew you were tender, but I didn't know you were that tender, and that is what caused the bruises.' "

Dr. Bennett M. Derby, in answer to a hypothetical question, was permitted to respond that a course of treatment as related to him would not meet the standards of good medical practice. He stated:

"So, we have the appearance of tissue death in the leg following the pattern of compression gangrene in a person who was complaining abnormally of pain very early in the operative course, and it is my opinion that at the time this pain appeared, the bandage had to have been unwrapped to prevent further compression."

Defendant, Dr. Noel, offered no evidence.

The jury answered the issue of negligence in favor of defendant and plaintiff appealed from judgment entered on the jury verdict. The Court of Appeals found no error. We allowed plaintiff's petition for writ of certiorari to the North Carolina Court of Appeals to review its decision on 30 April 1973.

*Yarborough, Blanchard, Tucker & Denson by Charles F. Blanchard for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell by John H. Anderson; Royster & Royster by Stephen S. Royster for defendant appellee.*

BRANCH, Justice.

The sole question for decision is presented by the following assignment of error:

"The Court erred in permitting counsel for defendant Noel to argue to the jury that doctors who were not called as witnesses by the defendant would have testified that Dr. Noel performed the operation on Mrs. Crutcher correctly and that nurses would have told Dr. Finch that the bandage was on too tight, as set forth in Plaintiff's Exception Numbers 5, 6 and 7."

During the jury arguments, counsel for plaintiff argued that defendant indicated to plaintiff and the court during jury selection, that he probably would call as witnesses Dr. Frank Warren Clippinger, Jr., Dr. John Glasson, Dr. T. B. Dameron, Dr. Don Pruitt, Dr. George Paschal, Dr. James Newsome, Dr. George Johnson, Dr. Ralph Coonrad, Dr. John W. Watson, Dr. Richard Taylor, Dr. R. L. Noblin, and Dr. Harry Fisk; and that he had failed to call any of those persons to testify in his behalf. Plaintiff's counsel further argued to the jury that if these named doctors would have been able to give testimony favorable to Dr. Noel's case, then certainly Dr. Noel would have called one or more of them as witnesses in his behalf.

In response to this argument, defendant's counsel thereafter argued to the jury that there was no use in the defendant presenting ten witnesses before the jury to say that Dr. Noel performed this operation correctly. At that time, plaintiff's counsel objected to this argument. The objection was overruled.

Defendant's counsel continued his argument saying, "I don't know why Mr. Blanchard should object to my mentioning the names of possible witnesses when Mr. Blanchard read the names of those witnesses to the jury. Why should we get them here just to say Dr. Noel did the operation correctly?" Defendant's counsel subsequently argued that one-half to three-quarters of the matters and things originally alleged by the plaintiff as specifications of negligence were no longer then in the lawsuit, and that Dr. Noel would only be bringing those witnesses *here to say what he, himself, had already said.* (Emphasis ours.) In regard to the nurses at Granville Hospital, Inc., defendant's counsel argued: "Don't you know that the nurses at the Hospital would have told Dr. Finch or Dr. Noel that the bandage was too tight, don't you know that?."

During the latter part of this argument, plaintiff's counsel again objected and his objection was again overruled.

[1]   The general rule is that counsel may argue all the evidence to the jury, with such inferences as may be drawn therefrom; but he may not "travel outside of the record" and inject into his argument facts of his own knowledge or other facts not included in the evidence. *Cuthrell v. Greene,* 229 N.C. 475, 50 S.E. 2d 525; *State v. Little,* 228 N.C. 417, 45 S.E. 2d 542; and *Perry v. Western North Carolina R. Co.,* 128 N.C. 471, 39 S.E. 27.

[2]   It is conceded, however, that there are occasions when counsel, in his remarks to the jury, may invite responsive or retaliatory argument by opposing counsel. *State v. Knotts,* 168 N.C. 173, 83 S.E. 972; *People v. Izzo,* 14 Ill. 2d 203, 151 N.E. 2d 329; *Bank v. Lancaster,* 100 S.W. 2d 1029 (Tex. Civ. App. 1936). Even so, such invitation does not grant opposing counsel *carte blanche* license to travel outside the record or beyond the bounds of proper response and retaliation.

When counsel makes an improper argument, it is the duty of the trial judge, upon objection or *ex mero motu,* to correct the transgression by clear instructions. If timely done, such action will often remove the prejudicial effect of improper argument. *Cuthrell v. Greene, supra.*

[3]   Here, the trial judge overruled plaintiff's objection to the challenged argument and thereby highlighted its effect by placing the stamp of judicial approval upon the argument.

In this case, the weight of the medical testimony was the paramount issue. Appellee's counsel is a prominent, persuasive and respected lawyer. His statement, although clearly made in the heat of battle and without thought of impropriety, to the effect that twelve doctors, listed as his witnesses, would have testified to the same thing that his client had testified to, offered facts outside the record which effectively buttressed his client's testimony on this crucial issue without granting plaintiff the guaranteed rights of confrontation and cross-examination. We think that this argument departed from the record with such force that it weighted the verdict in defendant's favor.

The decision of the Court of Appeals is reversed, and this cause is remanded to that Court for entry by it of a Judgment granting a new trial in the cause.

Reversed and remanded.