DAPHNE JOHNSON, PLAINTIFF-APPELLANT v. AMETHYST CORPORATION AND
AMETHYST CHARLOTTE, INC., D/B/A AMETHYST HOSPITAL, AND JOHN JOSEPH
BARTOLOTTA, DEFENDANT-APPELLEE

No. COA94-1334

(Filed 7 November 1995)

**1. Attorneys at Law § 29 (NCI4th)— entry of default—motion
to set aside by unauthorized attorney—error**

In a medical malpractice action against a hospital and one of
its employees, an attorney representing the hospital's insurer had
no authority to move to set aside an entry of default against the
employee where the employee was sued in his individual capac-
ity; no contact had taken place between the attorney and the
employee; counsel's motion was made without the employee's
knowledge; and the employee thus did not consent to the attor-
ney's representation of him.

**Am Jur 2d, Attorneys at Law §§ 141-145.**

**2. Physicians, Surgeons, and Other Health Care Professionals
§ 127 (NCI4th)— sexual molestation of patient—suffi-
ciency of evidence of medical malpractice**

The trial court erred in dismissing plaintiff's claim of medical
malpractice against the individual defendant where the evidence
tended to show that defendant was a clinical assistant in the sub-
stance abuse hospital where plaintiff was a patient; defendant
sexually molested plaintiff while she was lying in her hospital
bed; a witness who was accepted as an expert in the field of clin-
ical psychology testified that defendant's conduct violated the
standard of care as it relates to clinical assistants in substance
abuse hospitals in communities similar to Charlotte, North
Carolina; and plaintiff suffered severe emotional distress as a
result of defendant's sexual misconduct.

**Am Jur 2d, Physicians, Surgeons and Other Healers
§§ 357, 360.**

**Civil liability of doctor or psychologist for having sex-
ual relationship with patient. 33 ALR3d 1393.**

3. **Physicians, Surgeons, and Other Health Care Professionals § 121 (NCI4th); Fraud, Deceit, and Misrepresentation § 38 (NCI4th)— representation in hospital brochure—no intent to deceive—insufficiency of evidence of fraud**

The trial court did not err in refusing to submit plaintiff's claim for fraud against defendant substance abuse hospital to the jury where plaintiff claimed that the hospital's brochure falsely represented that the hospital "provides you with a very safe and secure facility. It is supervised at all times by reliable highly trained staff," while in fact she was sexually assaulted while a patient there, since the record was devoid of any evidence that the reference in the brochure to the hospital's safety was intended to deceive plaintiff.

**Am Jur 2d, Fraud and Deceit §§ 477, 482; Physicians, Surgeons, and Other Healers § 158.**

**Medical malpractice: liability based on misrepresentation of the nature and hazards of treatment. 42 ALR4th 543.**

**Liability of hospital or clinic for sexual relationships with patients by staff physicians, psychologists, and other healers. 45 ALR4th 289.**

4. **Physicians, Surgeons, and Other Health Care Professionals § 110 (NCI4th)— medical malpractice—highly inappropriate closing argument—prejudicial error**

In a medical malpractice claim arising from plaintiff's sexual molestation by defendant employee of defendant substance abuse hospital while plaintiff was a patient there, the closing argument of counsel for the individual defendant which referred to the sexual harassment allegations made by Anita Hill against Clarence Thomas, made allegations unsupported by the evidence in the record, and made disparaging remarks about a female judge's ability to be fair in sexual misconduct trials was so shockingly inappropriate and prejudicial as to entitled plaintiff to a new trial.

**Am Jur 2d, Trial §§ 609, 648, 712.**

5. **Evidence and Witnesses §§ 192, 3052 (NCI4th)— plaintiff's prior drug use—evidence inadmissible**

In a medical malpractice claim arising from plaintiff's sexual molestation by defendant employee of defendant substance

abuse hospital while plaintiff was a patient there, the trial court erred in allowing evidence of plaintiff's drug use twenty years prior to the cause of action, since defendants wanted to introduce the evidence "to develop the entire picture of a personality type" because it directly related to the issue of damages, but this reason was not one of the stated purposes allowing such evidence under North Carolina Rules of Evidence, Rule 404(b), and the evidence of prior drug use was irrelevant to plaintiff's credibility under Rule 608(b). N.C.G.S. § 8C-1, Rules 404(b), 608(b).

**Am Jur 2d, Evidence §§ 371, 413, 559.**

Appeal by plaintiff from judgments entered on 8 February 1994, and 15 February 1994, by Judge William Z. Wood, Jr. in Forsyth County Civil Superior Court. Heard in the Court of Appeals 1 September 1995.

*Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harold L. Kennedy, III, Harvey L. Kennedy, Lauren M. Collins, and Annie Brown Kennedy, for plaintiff-appellant.*

*Kurdys & Lovejoy, P.A., by Jeffrey S. Bolster and Mark C. Kurdys, for defendant-appellee.*

*Golding, Meekins, Holden, Cosper & Stiles, by Harvey L. Cosper, Jr. and Betsy J. Jones, for defendant-appellant Amethyst Corporation and Amethyst Charlotte, Inc., d/b/a Amethyst Hospital.*

WYNN, Judge.

Plaintiff, Daphne Johnson, appeals from the trial court's judgment in favor of defendants, Amethyst Corporation and Amethyst Charlotte, Inc., d/b/a Amethyst Hospital and John Joseph Bartolotta. We reverse and order a new trial.

In April 1991, Ms. Johnson was an in-patient at Amethyst Hospital, an alcohol and drug rehabilitation hospital that is owned and operated by defendants Amethyst Charlotte, Inc. and Amethyst Corporation (collectively referred to as "Amethyst"). During that time period, Mr. Bartolotta was employed by Amethyst as a clinical assistant.

On 8 April 1991, while Ms. Johnson was lying in her hospital bed, Mr. Bartolotta took her vital signs and allegedly molested her.

Inasmuch as the specific acts which form the basis of her allegation are not at issue, it is sufficient to indicate that the acts indicated in the record, if proved, would support her allegation.

On 19 April 1991, a counselor, Claire Parker, organized a meeting of all female patients at the hospital to inquire whether any female patients had been sexually assaulted at Amethyst. Four patients revealed that they had been sexually molested—all by Mr. Bartolotta. These allegations led to Mr. Bartolotta's plea of guilt and resulting convictions of assault on a female in each of the four cases.

On 8 June 1992, Ms. Johnson sued Mr. Bartolotta and Amethyst for medical malpractice, negligent misrepresentation, fraud, intentional infliction of mental and emotional distress, and negligent hiring and/or supervision of an employee.

When Mr. Bartolotta failed to file an Answer within the requisite time period, an entry of default was obtained from the Clerk of Superior Court of Forsyth County on 24 September 1992. However, when plaintiff moved for a Default Judgment, Attorney Mark C. Kurdys filed a motion to set aside the entry of default "in the absence and without the knowledge of John Joseph Bartolotta." On 12 October 1992, the plaintiff filed an objection to the appearance by Attorney Kurdys on behalf of Mr. Bartolotta without the knowledge of Mr. Bartolotta and in violation of Rule 5.6 of the N.C. Rules of Professional Conduct. On 2 November 1992, Judge Wood entered an Order setting aside the Entry of Default.

Following a jury verdict on 8 February 1994 in favor of defendants, plaintiff appealed.

I.

[1] The plaintiff first contends that the trial court erred by setting aside the Entry of Default. She argues that since Attorney Mark C. Kurdys had not established an attorney-client relationship with defendant Bartolotta, he had no authority to move to set aside default on behalf of Mr. Bartolotta. We agree.

No person has the right to appear as another's attorney without the authority to do so, granted by the party for which he is appearing. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319, 47 S.Ct. 361, 362, 71 L. Ed. 658 (1927). North Carolina law has long recognized that an attorney-client relationship is based upon principles of agency. *See State v. Ali*, 329 N.C. 394, 403, 407 S.E.2d 183, 189 (1991). Two factors

**JOHNSON v. AMETHYST CORP.**

[120 N.C. App. 529 (1995)]

are essential in establishing an agency relationship: (1) The agent must be authorized to act for the principal; and (2) The principal must exercise control over the agent. *Vaughn v. North Carolina Dep't of Human Resources*, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978), *aff'd*, 296 N.C. 683, 252 S.E.2d 792 (1979).

The record on appeal indicates that Attorney Kurdys filed the Motion to Set Aside Default "in the absence and without the knowledge of John Joseph Bartolotta" and that he had been retained by insurer St. Paul Fire and Marine Insurance Company, Amethyst's insurance carrier, "to monitor the pending lawsuit with the understanding that defendant Bartolotta's whereabouts were unknown."

We find no merit in the contention that because counsel has been employed by St. Paul Fire and Marine Insurance Company, he therefore represents Mr. Bartolotta. Indeed, St. Paul Fire and Marine Insurance Company is not a party to this action. Mr. Bartolotta was sued in his individual capacity and did not consent to Attorney Kurdys' representation of him. The record indicates that no contact has taken place between Attorney Kurdys and Mr. Bartolotta, and thus, counsel's representation has been undertaken without Mr. Bartolotta's knowledge. As such, the two required factors—authority of the agent and control by the principal—cannot be shown to exist where no contact has been made whatsoever between Attorney Kurdys and Mr. Bartolotta.

We find that Attorney Kurdys had no authority to act on behalf of Mr. Bartolotta. It follows that the trial court erred by setting aside the entry of default based on the motion made by Attorney Kurdys.

II.

[2] The plaintiff also contends that the trial court committed prejudicial error by refusing to submit plaintiff's claim of medical malpractice against defendant Bartolotta. We agree.

Our Supreme Court has held that where a trial court refuses to instruct the jury with respect to an issue, its jury charge amounts to an implied directed verdict on that issue. *Akzona, Inc. v. Southern Ry. Co.*, 314 N.C. 488, 495, 334 S.E.2d 759, 763 (1985). In order to withstand a motion for a directed verdict, the evidence must be viewed in the light most favorable to the non-moving party. Additionally, the plaintiff must offer evidence of each of the following elements in her claim for relief: (1) The standard of care; (2) breach of the standard

JOHNSON v. AMETHYST CORP.

[120 N.C. App. 529 (1995)]

of care; (3) proximate causation; and (4) damages. *Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E.2d 566, 570 (1981).

Claims for medical malpractice in North Carolina are governed by N.C. Gen. Stat. § 90-21.12 (1993). N.C.G.S. § 90-21.12 provides that health care providers are held to the "standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." A cause of action for medical malpractice may be initiated based upon sexual advances made by a health care professional. *See MacClements v. Lafone*, 104 N.C. App. 179, 184, 408 S.E.2d 878, 880-81, *disc. rev. denied*, 412 S.E.2d 87 (1991); *Mazza v. Huffaker*, 61 N.C. App. 170, 178, 300 S.E.2d 833, 838, *disc. rev. denied*, 309 N.C. 192, 305 S.E.2d 734 (1983). As such, when a plaintiff alleges that he/she has been sexually assaulted by a health care professional, a cause of action may arise from the failure of a health care provider to meet the relevant standard of care.

The evidence when viewed in a light most favorable to the non-moving party indicates as follows: Dr. Jerry Noble, a clinical psychologist, was accepted as an expert in the field of clinical psychology without objection. Dr. Noble testified that the conduct of Mr. Bartolotta violated the standard of care as it relates to clinical assistants in substance abuse hospitals in communities similar to Charlotte, North Carolina. Dr. Noble further testified that Ms. Johnson suffered severe emotional distress as a result of Mr. Bartolotta's sexual misconduct.

We find that this evidence was sufficient to withstand a directed verdict. *See MacClements v. Lafone*, 104 N.C. App. at 184, 408 S.E.2d at 880-81. Accordingly, the trial court erred by dismissing plaintiff's claim of medical malpractice against defendant Bartolotta.

III.

[3] Plaintiff next argues that the trial court committed prejudicial error in refusing to submit plaintiff's claim for fraud against defendant Amethyst to the jury. We disagree.

To establish a *prima facie* fraud claim, the following elements must be present:

(1) False representation or concealment of a material fact,

(2) reasonably calculated to deceive,

(3) made with the intent to deceive,

(4) which does in fact deceive,

(5) resulting in damage to the injured party.

*Carpenter v. Merrill Lynch,* 108 N.C. App. 555, 558, 424 S.E.2d 178, 179 (1993).

In order to meet the first element, some type of representation must have been made. Plaintiff argues that the fraud issue should have been submitted to the jury because the hospital brochure falsely represented that, "Amethyst provides you with a very safe and secure facility. It is supervised at all times by reliable highly trained staff." We disagree.

The plaintiff must prove a misrepresentation of a material fact. *See Powell v. Wold,* 88 N.C. App. 61, 64, 362 S.E.2d 796, 797 (1987). One's opinion, and generally one's promise, are not material facts. *Myrtle Apt., Inc. v. Lumberman's Mut. Cas. Co.,* 258 N.C. 49, 52, 127 S.E.2d 759, 761 (1979). However, a promissory representation may be fraud if made with the intent to deceive. *See Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 568-69, 374 S.E.2d 385, 392 (1988). In the case at hand, the record is devoid of any evidence that the reference in the brochure to Amethyst Hospital's safety was intended to deceive Ms. Johnson.

We therefore find no error with the trial court's refusal to submit a fraud issue as to defendant Amethyst.

IV.

**[4]** The plaintiff next argues that the closing argument of counsel for defendant Bartolotta contained highly inflammatory and prejudicial statements. We agree.

What is included in a closing argument must be supported by the evidence on the record. *See Waldron v. Waldron,* 156 U.S. 361, 379, 15 S.Ct. 383, 387, 39 L. Ed. 453 (1895); *Lamborn & Co. v. Hollingsworth,* 195 N.C. 350, 352, 142 S.E. 19, 21 (1928). Only the legitimate inferences that may be drawn from the evidence may be argued. *See, e.g., Wilson v. Commercial Finance Co.,* 239 N.C. 349, 359-60, 79 S.E.2d 908, 916 (1954). An attorney may not argue facts of his own knowledge, nor may he argue facts outside of the evidence. *Crutcher v. Noel,* 284 N.C. 568, 572, 201 S.E.2d 855, 857 (1974). Additionally, misstatements of the evidence on the record constitute reversible error. *See Berger v. United States,* 295 U.S. 78, 88-89, 55 S.Ct. 629, 633, 79 L. Ed. 1314 (1935).

In the instant case, Attorney Kurdys made the following statements during his closing argument:

> And about the same time in April of 1991 a law professor from Oklahoma State University accused a man who was nominated to be a Supreme Court Justice of the United States of sexual harassment and sexual impropriety. What was in it for her?
>
> . . .
>
> In a plea arrangement orchestrated by the attorneys for the four women who were making the charges . . . for the purpose of bringing legal claims within two days after they came forward with these allegations. How plausible is it that in response to these charges, descriptions of the conduct like Daphne Johnson has told you, that Judge Jane Harper—a female judge—would give John Bartolotta no active time if there was believable evidence that any of this were true?

Plaintiff's counsel objected to these statements, but his objections were overruled. We find these statements made during counsel's closing argument to be highly inflammatory, prejudicial, and not supported by the evidence.

First, counsel makes reference to the sexual harassment allegations made by Professor Anita Hill against then United States Supreme Court nominee Clarence Thomas by implying that Anita Hill had an ulterior motive in making her allegations. Whether she did or did not had no relevancy to the case at hand. The clear import of counsel's argument was to appeal to the passion and prejudice of the jurors that stem from that unrelated sexual harassment matter. We expressly reject the use of this type of inflammatory comparison which seeks only to incorporate and transfer the jurors' feelings from an unrelated matter to the case at hand. It is, in our opinion, prejudicially infirm to the sense of fairness and justice in our legal system.

Second, counsel's statement that the plea arrangement was "orchestrated by the attorneys for the four women who were making the charges," and that the women "had attorneys for the purpose of bringing legal claims within two days after they came forward with allegations," was unsupported by the evidence in the record. The record establishes only that after the women alleged that they were sexually molested, the four female patients at Amethyst Hospital talked with an attorney.

Finally and most egregious are counsel's disparaging statements that because District Court Judge Jane Harper is a female judge, she would not have accepted a plea bargain giving Bartolotta "no active time if there was believable evidence that any of the [allegations] were true." This argument is not only insulting to the judicial system as a whole, it further calls into question the fairness of female judges who preside over trials involving sexual misconduct. It is no more than a blatant attack on the integrity of judges who may share diverse qualities with a particular litigant. This court will neither condone nor permit practicing attorneys to take leave of their responsibilities to uphold the respectability of the judicial system. Finding counsel's argument to have been shockingly inappropriate, we conclude that plaintiff is entitled to a new trial free of these prejudicial statements by counsel in the closing argument.

## V.

[5] The plaintiff's last contention is that the trial court erred in allowing the introduction of evidence of plaintiff's prior use of illegal drugs. She argues that such information was highly prejudicial to her and defendants proffered no permissible use of such information under N.C. Gen. Stat. § 8C-1, Rules 404 and 608(b) (1993). We agree.

The North Carolina Rules of Evidence forbid the use of specific instances of conduct for the purposes of proving the credibility of a witness or lack thereof. N.C.R. Evid. 608(b). Prior drug use is included among the types of conduct affected by this rule. *See State v. Clark*, 324 N.C. 146, 162, 377 S.E.2d 54, 64 (1989); *State v. Rowland*, 89 N.C. App. 372, 382, 366 S.E.2d 550, 555 (1988), *rev. dismissed*, 323 N.C. 619, 374 S.E.2d 116 (1988). Additionally, Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.R. Evid. 404.

The defendants argue that the purpose for which defendant intended the testimony concerning plaintiff's drug use twenty years prior to the cause of action was "to develop the entire picture of a personality type" because it directly related to the issue of damages. This reason is not one of the stated purposes allowing such evidence

under Rule 404(b). In addition, the evidence of prior drug use is irrelevant to plaintiff's credibility under 608(b). We, therefore, find that the evidence of prior drug use was erroneously allowed into evidence by the trial court.

For the foregoing reasons, we reverse the judgment of the trial court and order a new trial.

New trial.

Judges GREENE and MARTIN, John C. concur.