HILMAR LEIBER, PLAINTIFF v. ARBORETUM JOINT VENTURE, LLC, AAC-ARBORE-
   TUM JOINT VENTURE CONSOLIDATED LIMITED PARTNERSHIP, AAC-
   FRANKLIN SQUARE LIMITED PARTNERSHIP, FRANKLIN III LIMITED PART-
   NERSHIP, AAC-FRANKLIN DEVELOPMENT GP LIMITED PARTNERSHIP,
   AAC-FRANKLIN DEVELOPMENT, INC., FRANKLIN SQUARE IV, LLC, SOUTH-
   LAKE LIMITED PARTNERSHIP, AAC RETAIL PROPERTY DEVELOPMENT AND
   ACQUISITION FUND, LLC, AAC RETAIL FUND MANAGEMENT, LLC, AMERI-
   CAN ASSET CORPORATION COMPANIES, LTD., AAC INVESTMENTS, INC.,
   GASTONIA LIMITED PARTNERSHIP, ARBOR LIMITED PARTNERSHIP, BANK
   OF AMERICA AND WACHOVIA BANK, DEFENDANTS

No. COA09-1284

(Filed 7 December 2010)

1. **Appeal and Error— appealability—interlocutory order—
   partial summary judgment—certification—possibility of
   inconsistent verdicts**

   An opinion and order granting a partial summary judgment affected a substantial right and was immediately appealable where it did not dispose of plaintiff's claims against all parties, but was final as to one party and the trial court certified it for appellate review. Whether the trial court had jurisdiction because

LEIBER v. ARBORETUM JOINT VENTURE, LLC

[208 N.C. App. 336 (2010)]

the certification was entered following the appeal was immaterial because plaintiff was deprived of a substantial right in that plaintiff was subjected to the possibility of inconsistent verdicts.

**2. Agency— receipt of investment checks—relationship with plaintiff—summary judgment inappropriate**

The trial court erred by concluding that there was no genuine issue of material fact as to whether Spreti (a deceased third-party) was acting as plaintiff's agent for the receipt of redemption checks in an action arising from investments made by plaintiff (who resided in Germany) through Spreti in North Carolina. The various claims and cross-claims primarily turned on the issue of Spreti's agency relationship with plaintiff, but a single inference could not be drawn from the evidence and summary judgment was inappropriate.

**3. Conversion— investment checks—not received personally —issue of fact on agency—summary judgment denied**

The trial court correctly denied a motion for summary judgment by defendant banks on a conversion claim arising from investment checks that were not received by plaintiff personally where there was a genuine issue of material fact as to the existence of an agency relationship between plaintiff and the person who received the checks.

**4. Conversion— warranties of presentment—not a shield against conversion**

Warranties of presentment did not eliminate genuine issues of material fact from a conversion claim arising from investment redemption checks that were not received by plaintiff.

**5. Conversion— imposter defense—issue of fact as to agency —addressed before defense**

In a claim involving forged investment redemption agreements, the genuine issues of material fact as to agency and authority to receive the instrument should have been addressed before the imposter defense, and the trial court correctly denied a motion for summary judgment based on that defense.

**6. Banks and Banking— investment proceeds—investor's agency issue—determined before cross-claim between banks**

Genuine issues of material fact existed in one bank's cross-claim against another in an action arising from investment pro-

ceeds not received by the investor where the first bank's warranty defense would only become active if plaintiff's conversion claim against the banks was successful, and that claim depended upon an unsettled agency issue.

Appeal by Plaintiff from an order entered 8 July 2009 by Judge Ben F. Tennille in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 March 2010.

> *Bishop, Capitano & Moss, P.A. by J. Daniel Bishop, for Plaintiff.*

> *Robinson, Bradshaw & Hinson, P.A. by Douglas M. Jarrell and Heyward H. Bouknight for Defendant Wachovia Bank.*

> *Driscoll Sheedy, P.A. by James W. Sheedy and Susan E. Driscoll for Defendant Bank of America.*

> *K&L Gates, LLP by Kiran H. Mehta and Samuel T. Reaves for Defendants Arboretum Joint Venture, LLC, AAC-Arboretum Joint Venture Consolidated Limited Partnership, AAC-Franklin Square Limited Partnership, Franklin III Limited Partnership, AAC-Franklin Development GP Limited Partnership, AAC-Franklin Development, Inc., Franklin Square IV, LLC, Southlake Limited Partnership, AAC Retail Property Development and Acquisition Fund, LLC, AAC Retail Fund Management, LLC, American Asset Corporation Companies, Ltd., and AAC Investments, Inc.*

BEASLEY, Judge.

Plaintiff appeals from an order granting the AAC Defendants' motion for summary judgment. For the reasons stated herein, we conclude that the trial court did indeed erroneously grant the AAC Defendants' motion for summary judgment and we reverse.

Plaintiff, Hilmar Leiber, is a German national who at times relevant to this action, resided in Germany. While living in Germany Plaintiff met fellow German national, Wolfram Count von Spreti. During their initial meeting, Plaintiff learned that Spreti had successfully invested money in several United States-based companies. Shortly thereafter, Spreti invited Plaintiff to begin making investments in the "AAC Defendants, a collection of entities that was

founded in Charlotte, North Carolina, beginning in the late [1980's]. The AAC Defendants primarily develop commercial real estate.[1]"

Plaintiff began his investment relationship with Spreti by transferring $210,000 from a Swiss Bank to Southlake, an AAC Defendant. However, Plaintiff failed to research the AAC Defendants and utilized Spreti as his sole source of information. Following the initial investment in Southlake, Plaintiff made several investments in AAC Defendants Arbor and Gastonia. "Arbor and Gastonia were both partnerships that held limited partnerships interests in other AAC entities. Spreti was the general partner of both Arbor and Gastonia." Throughout the course of the entire investment relationship, Plaintiff invested approximately $445,000 in the AAC Defendants.

Following apparent instruction from Spreti, all distribution checks, and documentation were sent directly to Spreti in Germany. Between 1990 and 2003 Spreti received approximately $315,000 in distribution checks and approximately $78,000 in tax refunds intended for Plaintiff. Of the amounts distributed by the AAC Defendants to Spreti, Plaintiff only received approximately $75,000. Despite being aware that distribution checks were being sent directly to Spreti, Plaintiff never objected to Spreti's receipt of the distribution checks and tax refunds.

"In July 2000, the AAC entities created the AAC Retail Fund. It was created to consolidate the AAC entities' interests in several commercial properties into one entity to facilitate an increased borrowing limit." Southlake was one of the AAC Defendants that contributed to the AAC Retail Fund in 2002. Plaintiff, along with other investors in Southlake, were given the opportunity to either roll their investment into the newly formed Retail Fund or sell their Southlake interest to the AAC Retail Fund. Plaintiff's election form was mailed to Spreti. After receiving the election form, Spreti opted to sell Leiber's interest in Southlake to the AAC Retail Fund and allegedly forged Plaintiff's signature on the document.

Thereafter, "the AAC Retail Fund issued a Wachovia Bank check . . . payable to [Plaintiff] in the amount of $151,274" for the purchase

---

1. The AAC Defendants consists of the following defendants: Arboretum Joint Venture, LLC, AAC-Arboretum Joint Venture Consolidated Limited Partnership, AAC-Franklin Square Limited Partnership, Franklin III Limited Partnership, AAC-Franklin Development GP Limited Partnership, AAC-Franklin Development, Inc., Franklin Square IV, LLC, Southlake Limited Partnership, AAC Retail Property Development and Acquisition Fund, LLC, AAC Retail Fund Management, LLC, American Asset Corporation Companies, Ltd., and AAC Investments, Inc.

of Plaintiff's interest in Southlake. Plaintiff alleges that Spreti forged his indorsement on the check, cashed it at a German bank, and retained the proceeds. When Spreti cashed the Wachovia check, the German bank transferred the Wachovia Bank check to American Express Bank for collection. American Express Bank presented the Wachovia Check to Wachovia for payment, and Wachovia paid in full.

In January 2001, AAC Defendants Arbor and Gastonia con- tributed to the AAC Retail Fund. In 2003, Plaintiff was given the option to sell his interest in Arbor and Gastonia to the AAC Retail Fund or roll them into the ACC Retail Fund. Again, forging Plaintiff's signatures on the election forms, Spreti opted to sell Plaintiff's inter- ests in Arbor and Gastonia. After receiving the signed documents, the AAC Retail Fund "issued a Bank of America check . . . payable to Leiber in the amount of $254,858." Plaintiff again alleges that Spreti forged his indorsement on the check and retained the proceeds from the sale of the Arbor and Gastonia interests. To obtain the funds from the sale, "Spreti negotiated the [Bank of America Check] at Oberbank, AG. Oberbank transferred the [Bank of America Check] to Wachovia for collection. Thereafter, Wachovia presented the check to [Bank of America] for payment, and [Bank of America] paid in full."

In November 2004, Spreti committed suicide prior to meeting scheduled with Plaintiff to discuss his investments in the AAC Defendants. Plaintiff alleges that he did not learn about Spreti's actions until after his suicide. On 19 October 2005, Plaintiff filed suit against Wachovia, Bank of America, and the AAC Defendants. In an amended Complaint Plaintiff alleged causes of action for unjust enrichment, breach of contract, reinstate/winding up of partnerships, breach of fiduciary duty, negligence, conversion, and unfair and deceptive trade practices against the AAC Defendants. In his claims against AAC Defendants, Plaintiff argued that disbursement pay- ments from the AAC Defendants should not have been delivered to Spreti because he *was not* Plaintiff's authorized agent. Against Wachovia and Bank of America, Plaintiff alleged causes of action for conversion, arguing that Spreti *was* acting as an authorized agent when receiving the bank checks. Additionally, by cross-claim, Bank of America filed suit against Wachovia Bank alleging that Wachovia breached the warranty of presentment by enforcing a check that bore a "forged or unauthorized payee indorsement."

On 29 February 2008, AAC Defendants filed a motion for sum- mary judgment arguing, in pertinent part, that "the undisputed evidence

in this case establishes that Spreti was [Plaintiff's] agent, and had the authority to sign the redemption agreement in question and to receive the checks on [Plaintiff's] behalf to buy out his interest in the AAC Defendants." Bank of America and Wachovia filed summary judgment motions, arguing that Spreti was not Plaintiff's agent and could therefore not be held liable for statutory conversion of the bank checks because Plaintiff never received "delivery" of the checks as required for a statutory conversion claim.

On 8 July 2009, the trial court granted the AAC Defendants' motion for summary judgment, denied Wachovia's and Bank of America's motions for summary judgment against Plaintiff and granted Bank of America's motion for summary judgment on the cross-claim. In its opinion and order the trial court found that "as a matter of law . . . Spreti was [Plaintiff's] agent for purposes of receipt of the Redemption Checks." However, in a footnote within the opinion and order, the trial court observed that "[Plaintiff] has straddled the fence on the question of Spreti's agency. Accordingly, he could not and did not move for summary judgment with respect to his claims against the Banks. Those claims remain for trial."

On 21 July 2009, Plaintiff filed a motion seeking to modify the order to "include a certification of no just reason for delay pursuant to Rule 54(b) in order to make the order explicitly appealable." On 5 August 2009, Plaintiff filed notice of his intent to appeal the trial court's opinion and order. The day after Plaintiff filed his notice of appeal, the trial court entered a Rule 54(b) certification. On 13 August 2009, Bank of America and Wachovia filed notice of cross-appeal.

On appeal Plaintiff argues that: (I) the trial court erroneously concluded that Spreti was Plaintiff's agent for the purpose of receiving redemption and distribution checks; (II) the trial court erroneously resolved the issue of Spreti's agency in favor of the AAC Defendants and left the same issue for trial as against the Bank Defendants; (III) the trial court erred by concluding that he was not entitled to sue derivatively, in the alternative, on behalf of Arbor limited partnership and Gastonia limited partnership; and (IV) the trial court erred or abused its discretion in concluding that other limited partners were necessary parties and in dismissing claims for failure to join such limited partners. Before addressing the substantive issues on appeal, we must first examine a motion to dismiss filed by the AAC Defendants.

## Motion to Dismiss

**[1]** By motion, the AAC Defendants attempt to dismiss Plaintiff's appeal and the cross appeals of Bank of America and Wachovia. In their motion to dismiss, the AAC Defendants argue that "this appeal is premature, in that the Order & Opinion from which [the] appeal is taken is interlocutory, no substantial right is affected, and there is thus no appellate jurisdiction." We disagree. ·

"Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999) (citing *Veazey v. City of Durham*, 231 N.C. 357, 361, 57 S.E.2d 377, 381 (1950)). "As a general rule, interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citation omitted). However,

> [t]here are . . . two means by which an interlocutory order may be appealed: (1) if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal pursuant to N.C. R. Civ. P. 54(b) or (2) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.

*Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669 (2000) (citations and internal quotation marks omitted).

The trial court's opinion and order in this case fails to dispose of Plaintiff's claims against the banks, rendering the order interlocutory. However, despite the interlocutory nature of the trial court's order, Plaintiff's appeal to this Court is ripe for appellate review. The trial court's order granting the AAC Defendants' motion for summary judgment is final as to Plaintiff's claims against them. Because the trial court's order is final as to one party and the trial judge certified that there was no just reason to delay the appeal, the trial court order was appropriate for appellate review. *See James River Equip., Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 340, 634 S.E.2d 548, 552 (2006). However, the AAC Defendants contend that the trial court lacked jurisdiction to certify the appeal for immediate appellate review because the trial court entered its Rule 54(b) certification following Plaintiff's appeal to this Court. Assuming arguendo that the contention of the AAC Defendants is correct, the error is immaterial where the trial court's order also deprives Plaintiff of a substantial

right. An interference with a plaintiff's right to avoid facing the possibility of two trials may be an interference with a substantial right if "the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982). "This Court has interpreted the language of *Green* and its progeny as creating a two-part test requiring a party to show that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 735-36, 460 S.E.2d 332, 335 (1995).

Here, the trial court's opinion and order affects a substantial right and is therefore immediately appealable. The trial court found that

> [u]ltimately, the alternative liability of the AAC Defendants or the Banks will turn on whether Spreti was or was not [Plaintiff's] agent. Based on the record in the instant case, the Court finds as a matter of law that Spreti was [Plaintiff's] agent for purposes of receipt of the Redemption Checks.

The trial court's finding essentially eliminated Plaintiff's cause of action against the AAC Defendants. However, the trial court order also left Plaintiff's cause of action against the banks, including the agency issue, to be decided at a subsequent trial. Therefore, jurors in a subsequent trial could find that Spreti was not acting as Plaintiff's agent with respect to the banks, however, if the trial court's summary judgment order were reversed on appeal, jurors in a second trial may find that Spreti was indeed acting as Plaintiff's agent. Because both trials could address the same factual issues and reach different conclusions, thereby subjecting Plaintiff to the possibility of inconsistent verdicts, this appeal is appropriate for appellate review.

The AAC Defendants argue that "since [Plaintiff's] trial against the Banks would likely focus on different issues than any future trial against the AAC Defendants, any risk of inconsistent verdicts is slight at best." While we agree that Plaintiff's subsequent trial against the Banks would require Plaintiff to address issues other than Spreti's agency, the issue of agency will be an issue at the subsequent trial, creating a risk of inconsistent verdicts on appeal. Accordingly, we deny the AAC Defendants' motion to dismiss.

Plaintiff's Appeal from Summary Judgment

I.

**[2]** Plaintiff first argues that the trial court erroneously concluded that there was no genuine issue of material fact as to whether Spreti was acting as his agent for receipt of the Redemption checks. We agree.

Summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "The rule is designed to eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed." *Dalton v. Camp*, 353 N.C. 647, 650, 548 S.E.2d 704, 707 (2001). "The party moving for summary judgment has the burden of establishing the lack of any triable issue." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). All evidence is viewed in the light most favorable to the non-moving party. *See id.* The doctrine of summary judgment requires cautious application, ensuring that no litigant is unjustly deprived of his right to try disputed factual issues. *Barbee v. Johnson*, 190 N.C. App. 349, 352, 665 S.E.2d 92, 95-96 (2008).

Our Supreme Court has stated that "[a]n agent is one who acts for or in the place of another by authority from him." *Trust Co. v. Creasy*, 301 N.C. 44, 56, 269 S.E.2d 117, 124 (1980). "Two factors are essential in establishing an agency relationship: (1) [t]he agent must be authorized to act for the principal; and (2) [t]he principal must exercise control over the agent." *Johnson v. Amethyst Corp.*, 120 N.C. App. 529, 532-33, 463 S.E.2d 397, 400 (1995). Typically, the agency question is a factual determination that must be made by the jury, however, "if only one inference can be drawn from the facts then it is a question of law for the trial court." *Vares v. Vares*, 154 N.C. App. 83, 87, 571 S.E.2d 612, 615 (2002) (citation, quotations, and brackets omitted).

In this case, the trial court erroneously determined that there was no genuine issue of material fact as to whether Spreti was Plaintiff's agent for the purposes of receiving redemption checks from the AAC Defendants. The trial court based its conclusion on the theories of apparent authority, apparent agency, implied actual authority, and ratification. While all the theories relied on by the trial court are different, they share many common elements.

LEIBER v. ARBORETUM JOINT VENTURE, LLC

[208 N.C. App. 336 (2010)]

To support its determination that Spreti was authorized to receive the redemption checks under the doctrines of apparent authority and apparent agency, the trial court was required to find that the AAC Defendants reasonably relied on representations by Plaintiff. *See Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974) (explaining that to hold the principal liable for an agent's actions done under the scope of apparent authority, "the determination of a principal's liability . . . must be [based] [upon] what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent."); *See also Deal v. N.C. State University*, 114 N.C. App. 643, 442 S.E.2d 360 (1994) (explaining that apparent agency is a form of equitable estoppel and estoppel requires the harmed party to have justifiably relied on the representations by the principal).

To support its conclusion the trial court generally found that: (1) Plaintiff did not exercise due diligence before making his investments in the AAC Defendants and relied solely upon the advice and oversight of Spreti in the execution of the investment documents; (2) Plaintiff relied upon Spreti to manage his investments in the AAC Defendants; (3) During the course of their fifteen year investment relationship Plaintiff never raised objection to Spreti's receipt of disbursement checks from the AAC Defendants; and (4) Spreti was a general partner of Arbor and Gastonia. "Given that all partners are agents for each other, [Plaintiff's] investment in Arbor and Gastonia indicates an agency relationship between [Plaintiff] and Spreti." The trial court relied on these same factual findings throughout the order to support its conclusions of law. While we agree that the facts relied on by the trial court could support a finding of apparent agency and apparent authority, various facts in the record create a genuine issue of material fact as to whether the AAC Defendants reasonably relied on representations by Plaintiff.

In a Southlake partnership agreement Plaintiff provided the address of a Swiss bank employee as his Address of Notices. Documentation in which Plaintiff expressly indicated that an individual other than Spreti was to receive notices, conflicts with the notion that the AAC Defendants' reliance on the alleged representations by Plaintiffs was justifiable. While acknowledging that the Southlake investment document was evidence "that [Plaintiff] wanted someone other than Spreti handling his investments in the United States," the trial court found that this argument was not persuasive. The trial court reasoned that Plaintiff testified that he was not responsible for

filling out the Address of Notices provision of the document and "had reached no agreement with anyone regarding disbursements or notices concerning his investments in the AAC Defendants." However, as discussed above, both doctrines are examined from the perspective of the aggrieved third party. Therefore, a principal's unexpressed intentions and motivations would have no affect on the reliance of a third party. Without a representation by Plaintiff, the AAC Defendants could not have known that the Address of Notice provision was not a reflection of his actual intent. Because there is evidence that the AAC Defendants' reliance on Plaintiff's representations may have been unreasonable, the trial court erroneously determined that there was no genuine issue of material fact with respect to the doctrines of apparent agency and apparent authority.

In its order the trial court also concluded that Plaintiff provided Spreti with implied actual authority to receive the redemption checks. In reaching its conclusion the trial court relied on the same general facts as with respect to the doctrines of apparent agency and apparent authority. "Actual authority is that authority which the agent reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal." *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 830, 534 S.E.2d 653, 655 (2000). "Actual authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." *Id.*

In this case, the trial court erroneously failed to determine that there was a genuine issue of material fact as to whether Spreti reasonably believed that he was authorized to receive the redemption checks. As discussed above, Plaintiff signed an investment document identifying someone other than Spreti as the appropriate party to receive notices. Because there is no evidence that Plaintiff expressly provided Spreti with any authority regarding his United States investments, documentation signed by Plaintiff indicating that Spreti lacked authority creates a genuine issue of material fact as to the reasonableness of Spreti's belief. Additionally, there is evidence that Spreti forged Plaintiff's signature on a number of checks and other investment documents, retained the proceeds from several of Plaintiff's investments, and committed suicide before a meeting to discuss Plaintiff's investments. This evidence does not demonstrate that Spreti reasonably believed that he was within the scope of his authority as to Plaintiff's United States investments. Accordingly, a jury should determine whether Plaintiff conferred upon Spreti the actual authority to receive the redemption checks.

The trial court also erroneously determined that there was no genuine issue of material fact as to whether Leiber ratified the actions of Spreti. Addressing the doctrine of ratification, our Court has explained that:

Ratification is defined as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency § 82 (1958). "Ratification requires intent to ratify plus full knowledge of all the material facts." *Contracting Corp. v. Bank of New Jersey*, 69 N.J. 352, 361, 354 A.2d 291, 296 (1976). It "may be express or implied, and intent may be inferred from failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Id.*

American *Travel Corp. v. Central Carolina Bank*, 57 N.C. App. 437, 442, 291 S.E.2d 892, 895 (1982). In this case, the trial court found that "[Plaintiff] was aware of all material facts because he received numerous disbursement checks from Spreti over the course of fifteen years. [Plaintiff] failed to object to Spreti receiving the disbursement checks on each and every occasion." However, there is no evidence in the record that Plaintiff was aware of the number of disbursement checks that Spreti actually received from the AAC Defendants. Moreover, there is no evidence that Plaintiff was aware of Spreti's receipt of the redemption checks. Accordingly, there is a genuine issue of material fact as to whether Plaintiff had full knowledge of all material facts.

While there is evidence indicating that Spreti was acting as Plaintiff's agent for the purpose of receiving the redemption checks, there is also contrary evidence in the record. Because a single inference cannot be drawn from the evidence, summary judgment is inappropriate in this case. The resolution of the conflicting factual issues is a role appropriately reserved for a jury. The various claims and cross-claims raised by the banks in this case primarily turn on the issue of Spreti's agency relationship with Plaintiff. Accordingly, the trial court appropriately denied the banks' motions for summary judgment on Plaintiff's conversion claim.

## Bank of America and Wachovia's Motions for Summary Judgment

In its order the trial court denied the banks' motion for summary judgment as to Plaintiff's conversion cause of action because the trial court found that genuine issues of material fact remain. Wachovia and Bank of America appeal the trial court's decision. As we have discussed above, the banks' appeal from the trial court's interlocutory order is ripe for appellate review.

### I.

[3] The banks first argue that there is no genuine issue of material fact as to Plaintiff's conversion cause of action because the checks were not delivered to Plaintiff or his agent. We disagree. Adopting language from the Uniform Commercial Code, our General Assembly has explained that:

> An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument, or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent ora co-payee.

N.C. Gen. Stat. § 25-3-420(a) (2009); U.C.C. § 3-420(a). There is no evidence in the record indicating that Plaintiff received the bank checks personally. Moreover, we have already determined that there is a genuine issue of material fact as to Spreti's agency relationship with Plaintiff. Therefore, there is a factual dispute as to whether Plaintiff ever "received" any allegedly converted instrument. The trial court's decision to deny the banks' motion for summary judgment with respect to Plaintiff's conversion cause of action was not erroneous.

### II.

[4] Next, Bank of America argues that the trial court failed to determine that the presentment warranties eliminated the need to try Plaintiff's conversion cause of action. We disagree.

A party presenting a check to a drawee bank for payment is warranting that:

> (1) [t]he warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or autho-

rized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;

(2) The draft has not been altered; and

(3) The warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.

N.C. Gen. Stat. § 25-4-207.1(a) (2009). In *North Carolina Nat. Bank v. Hammond,* our Supreme Court explained that:

> [a]ny adjudicated or noncontested forgery triggers this warranty. Thus, if a payor/drawee bank suffers a loss by paying a check over a proven forged indorsement, it may sue the collecting bank which presented the check to it on a theory of breach of warranty of good title. That collecting bank in turn may sue the next collecting bank and so on down the collection chain. Final liability for the check with a forged indorsement under the Uniform Commercial Code rests ultimately on the initial depository bank which presumably could have guarded against the loss by inspecting the indorsement more closely.

298 N.C. 703, 708, 260 S.E.2d 617, 621 (1979) (citation omitted).

Here, while Bank of America may be able to argue that the presentment warranties allow them to file suit against the collecting bank, it does not act as a shield from Plaintiff's conversion suit. As explained in *Hammond,* the presentment warranties shift liability up the chain of collecting banks until it reaches the initial depository bank that could have best protected against the forgery. It is only after Bank of America suffers a loss on Plaintiff's conversion action that the warranties of presentment defense becomes available. Accordingly, the warranties of presentment do not eliminate the genuine issues of material fact from Plaintiff's conversion cause of action.

### III.

[5] Wachovia Bank argues that because the impostor rule is a complete defense to Plaintiff's conversion cause of action, the trial court erred by denying their motion for summary judgment. We disagree. Explaining the impostor rule our General Assembly has provided that:

> (a) If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the

payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

N.C. Gen. Stat. § 25-3-404(a) (2009). Wachovia Bank contends that by "forging [Plaintiff's] signature on the redemption agreements, Spreti impersonated Plaintiff." However, the scope of Spreti's agency relationship with Plaintiff remains unsettled. Therefore, a genuine issue of material fact remains as to whether Spreti was authorized to receive the instrument in this case. Accordingly, the impostor defense should be addressed following a trial settling the nature of Spreti's agency relationship with Plaintiff.

### Bank of America and Wachovia Cross-Claim

[6] By cross-claim Bank of America filed suit against Wachovia Bank alleging that if "[Plaintiff] can maintain an action against Bank of America for conversion of the Bank of America Check, then Bank of America is entitled to summary judgment against Wachovia because Wachovia breached the presentment warranties upon the presentment of the Bank of America Check with a forged payee indorsement." As discussed above, Bank of America's warranty defense only becomes active if Plaintiff's conversion claims against the banks is successful. *See Hammond*, 298 N.C. at 708, 260 S.E.2d at 621 (explaining that "if a payor/drawee bank suffers a loss by paying a check over a proven forged indorsement, it may sue the collecting bank which presented the check to it on a theory of breach of warranty of good title."). Because Plaintiff's conversion claim depends upon the unsettled agency issue, genuine issues of material fact remain with respect to Bank of America's cross-claim.

Reversed.

Judges BRYANT and STEELMAN concur.