REBECCA DUNKLEY v. LEE H. SHOEMATE, ERIC B. MUNSON, DAVID S. JANOWSKY, PRESTON A. WALKER, MARY F. LUTZ, DOE ONE, DOE TWO, AND DOE THREE

No. 178PA98

(Filed 25 June 1999)

**Attorneys— appearance as counsel—no contact with client**

The trial court erred by denying plaintiff's motion for removal of defense counsel where defendant had been employed as a psychiatric resident at UNC Hospitals; an attempt to verify his credentials as a part of the licensing process revealed no record of him attending any medical school; he resigned and absconded; plaintiff filed an action alleging that defendant had engaged in nonconsensual sexual intercourse with her while falsely representing that he was a resident physician on the staff at UNC; a law firm retained to represent the UNC Liability Insurance Trust Fund filed a motion seeking permission to appear as counsel for defendant in this case on a limited basis in order to defend him in his absence, to protect the interest of UNC-LITF, and to respond to discovery requests to the extent possible; the court entered an order granting the firm's motion; and plaintiff filed this motion to remove the law firm as counsel for defendant. The law firm has had no contact with defendant and has not been authorized by him to undertake his representation in this or any other matter; no attorney-client relationship exists between defendant and the attorneys seeking to represent him. It was noted that Rule 24 of the North Carolina Rules of Civil Procedure provides a means by which an interested party may intervene in a pending lawsuit.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 129 N.C. App. 255, 497 S.E.2d 713 (1998), reversing an order entered 26 July 1996 by Battle, J., in

**DUNKLEY v. SHOEMATE**

[350 N.C. 573 (1999)]

Superior Court, Orange County, denying plaintiff's motion requesting the removal of counsel for defendant Shoemate. Heard in the Supreme Court 14 January 1999.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr., for plaintiff-appellee.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Robert M. Clay, Donna R. Rutala, and G. Lawrence Reeves, Jr., for defendant-appellant Shoemate.*

*Battle, Winslow, Scott & Wiley, P.A., by Marshall A. Gallop, Jr., on behalf of the North Carolina Association of Defense Attorneys, amicus curiae.*

*Bailey & Dixon, L.L.P., by Gary S. Parsons and Kenyann Brown Stanford, on behalf of Nationwide Mutual Insurance Company and the Alliance of American Insurers, amici curiae.*

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by Henderson Hill, on behalf of the North Carolina Academy of Trial Lawyers, amicus curiae.*

ORR, Justice.

The sole question presented in this case is whether the trial court erred in failing to remove the law firm of Patterson, Dilthey, Clay & Bryson, L.L.P., as counsel for defendant Lee H. Shoemate. Pertinent facts and circumstances in this case are as follows.

On 5 January 1989, Shoemate, representing that he had received his undergraduate degree from the University of Texas and that he was an M.D./Ph.D. candidate at Harvard Medical School expecting to graduate in August of 1989, applied for a psychiatry residency at the University of North Carolina Hospitals at Chapel Hill ("UNC"). Shoemate was interviewed for the position on 10 January 1989, and defendant Walker of UNC's Department of Psychiatry received letters of recommendation ostensibly from Alvin F. Poussaint, M.D., associate dean, Harvard Medical School and Daniel Perschonok, Ph.D., lecturer on psychology, Harvard Medical School.

UNC offered Shoemate a residency on 20 February 1989, which he accepted, and on 15 May 1989, he entered into an employment contract with UNC under which he was appointed to the hospital's house staff as a resident in psychiatry. Shoemate's residency began on 18 July 1989.

**DUNKLEY v. SHOEMATE**

[350 N.C. 573 (1999)]

On 25 September 1989, plaintiff was admitted as a patient to UNC for treatment of psychological illnesses, including depression. When plaintiff was discharged on 10 October 1989, she was given a treatment plan that included biweekly visits with a psychiatric therapist to be assigned by UNC. Plaintiff's care was assigned to Shoemate for a period of time including 14 August 1990.

During the second year of his residency, Shoemate, who had previously been granted a training license, applied to the North Carolina Board of Medical Examiners for a full medical license. A routine attempt to verify Shoemate's credentials as part of the licensing process revealed that the American Medical Association had no file on Shoemate and that there was no record of his attending Harvard or any other medical school. On or about 1 October 1990, after his false representations were discovered, Shoemate resigned and absconded. Subsequent attempts to locate him have been futile.

In *University of North Carolina v. Shoemate*, 113 N.C. App. 205, 437 S.E.2d 892, *disc. rev. denied*, 336 N.C. 615, 447 S.E.2d 413 (1994), UNC sought a declaratory judgment against Shoemate and Ruby Staton decreeing that UNC was not obligated to provide medical malpractice coverage to Shoemate after Staton, another of Shoemate's patients at UNC, filed a civil action against Shoemate and others alleging medical negligence. In a unanimous decision, the Court of Appeals found that although Shoemate's employment contract was void *ab initio*, "UNC did permit Shoemate to be represented as its agent." *Id.* at 215, 437 S.E.2d at 898. The court held that the University of North Carolina Liability Insurance Trust Fund ("UNC-LITF") "provides coverage against personal tort liability for any person or individual whether an employee, agent or officer of UNC, working within the course and scope of [his or her] health-care functions." *Id.* at 212, 437 S.E.2d at 896.

UNC-LITF retained the law firm of Patterson, Dilthey, Clay & Bryson, L.L.P. ("law firm"), to defend Shoemate in this suit to the extent that the trust fund provided coverage for Shoemate's acts. Since 1991, the law firm has attempted to contact defendant Shoemate with no success and therefore at no time has been authorized by him to appear on his behalf and defend this suit.

In this action filed on 13 July 1994, plaintiff alleged that on 14 August 1990, Shoemate engaged in nonconsensual sexual intercourse with her, while falsely representing that he was a medical doctor and a resident physician on staff at UNC. Plaintiff further alleged that fol-

lowing the alleged incident, Shoemate continued to treat her, informed her that this sexual contact was a necessary part of her treatment, and threatened to involuntarily commit her to a psychiatric hospital if she told anyone about the incident.

On 30 August 1994, the law firm filed a motion pursuant to Rule 16 of the General Rules of Practice for the Superior and District Courts seeking permission from the court to appear as counsel for Shoemate in this case on a limited basis in order to defend him in his absence, to protect the interests of UNC-LITF, and to respond to discovery requests to the extent that it could provide reliable responses without having communicated with Shoemate. On 14 September 1994, Superior Court Judge A. Leon Stanback, Jr., entered an order granting the law firm's motion to appear for defendant Shoemate on a limited basis.

While no appeal was taken from this order, we find no basis for allowing the motion to appear. First, there is no authority under Rule 16 for such an action. Second, no effort was made by UNC-LITF to intervene. All we have is a motion by a law firm asking to represent, in a limited capacity, a party to whom attorneys at the law firm have never spoken and who has not authorized the law firm to represent him.

The law firm, having been allowed to appear, then filed an answer on Shoemate's behalf asserting defenses including lack of personal jurisdiction over defendant, expiration of the statute of limitations, and denial of plaintiff's allegation of rape.

On 11 July 1996, plaintiff filed a motion to remove the law firm as counsel for defendant Shoemate. On 26 July 1996, after a hearing, Superior Court Judge Gordon F. Battle entered an order denying plaintiff's motion for removal of counsel. Plaintiff appealed to the Court of Appeals. The Court of Appeals dismissed the appeal of the denial of plaintiff's motion as interlocutory. *Dunkley v. Shoemate*, 121 N.C. App. 360, 465 S.E.2d 319 (1996). However, on appeal, this Court held that "[t]he interlocutory order of the superior court . . . affects a substantial right which the plaintiff will lose if the order is not reviewed before final judgment" and remanded the case to the Court of Appeals for a hearing on the merits. *Dunkley v. Shoemate*, 346 N.C. 274, 274, 485 S.E.2d 295, 295 (1997) (*per curiam*).

In a unanimous decision, the Court of Appeals held "that Patterson Dilthey lacks the authority to act on Shoemate's behalf"

## DUNKLEY v. SHOEMATE

[350 N.C. 573 (1999)]

and reversed the trial court's order. *Dunkley v. Shoemate*, 129 N.C. App. 255, 258, 497 S.E.2d 713, 715 (1998). The law firm argued that the Court of Appeals should overturn its decision in *Johnson v. Amethyst Corp.*, 120 N.C. App. 529, 463 S.E.2d 397 (1995), *disc. rev. allowed*, 342 N.C. 655, 467 S.E.2d 713, *disc. rev. withdrawn*, 343 N.C. 122, 471 S.E.2d 65 (1996), in which the court held that counsel for the insurer lacked authority to act on the insured's behalf without the knowledge and consent of the insured. The court noted that it could not overturn *Amethyst Corp.* because "one panel of the Court of Appeals may not overturn the holding of another panel." *Dunkley*, 129 N.C. App. at 258, 497 S.E.2d at 715.

In *Amethyst Corp.*, as in this case, counsel for an insurance carrier attempted to represent the defendant despite the fact that counsel had no contact with the defendant and had not been authorized by the defendant to represent him. The plaintiff appealed after the trial court granted the defendant's motion to set aside an entry of default in the defendant's absence and without the defendant's knowledge or consent.

In holding that the insurer's counsel in *Amethyst* was without authority to move on the defendant's behalf to set aside the entry of default, the court correctly noted that "[n]o person has the right to appear as another's attorney without the authority to do so, granted by the party for which he [or she] is appearing." *Amethyst Corp.*, 120 N.C. App. at 532, 463 S.E.2d at 400. As the court in *Amethyst Corp.* further stated, "North Carolina law has long recognized that an attorney-client relationship is based upon principles of agency," and "[t]wo factors are essential in establishing an agency relationship: (1) The agent must be authorized to act for the principal; and (2) The principal must exercise control over the agent." *Id.* at 532-33, 463 S.E.2d at 400.

In addition to the Court of Appeals' decision in *Amethyst Corp.*, plaintiff relies on RPC 223, an ethics opinion issued by the North Carolina State Bar, and Rule 1.2(a) of the Rules of Professional Conduct of the North Carolina State Bar ("Rule 1.2"). Under RPC 223, "the client's failure to contact the lawyer within a reasonable period of time after the lawyer's last contact with the client must be considered a constructive discharge of the lawyer." Ethics op. RPC 223, <u>N.C. State Bar Lawyers' Handbook 1999</u>, at 198, 199 (Jan. 12, 1996). Once reasonable attempts to locate the client prove to be unsuccessful, RPC 223 requires that the lawyer withdraw from the representation

**DUNKLEY v. SHOEMATE**

[350 N.C. 573 (1999)]

of a client who has disappeared. Rule 1.2(a) requires a lawyer to "abide by a client's decisions" and to "consult with the client as to the means by which they are to be pursued." R. Prof. Conduct N.C. St. B. 1.2(a), 1999 Ann. R. N.C. 503.

Although, as the law firm argues, RPC 223 is based on facts distinguishable from those in this case, RPC 223, Rule 1.2(a), and *Amethyst Corp.* correctly emphasize the principle that a lawyer cannot properly represent a client with whom he has no contact. Here, as in *Amethyst Corp.*, no attorney-client relationship exists between defendant and the attorneys seeking to represent him. The law firm has had no contact with defendant and has not been authorized by him to undertake his representation in this or any other matter. Therefore, we conclude that the trial court erred in failing to remove the firm from the representation of Shoemate. Accordingly, we affirm the Court of Appeals' holding that the law firm lacks the authority to act on Shoemate's behalf.

Having held that a law firm or attorney may not represent a client without the client's permission to do so, we note that Rule 24 of the North Carolina Rules of Civil Procedure provides a means by which an interested party, under certain circumstances, may intervene in a pending lawsuit. Under Rule 24(a)(2), anyone may be allowed to intervene in a pending lawsuit

> [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and he [or she] is so situated that the disposition of the action may as a practical matter impair or impede his [or her] ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

N.C.G.S. § 1A-1, Rule 24(a)(2) (1990). Thus, intervention is an appropriate mechanism by which an interested party may attempt to protect its interests in pending litigation.

AFFIRMED.