NO. COA13-512

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

JENNIFER TYLL & DAVID TYLL,
        Plaintiffs,

        v.                                    Orange County
                                              No. 12 CVD 755
JOEY BERRY,
        Defendant.


Appeal by defendant from orders entered 18 December 2012 by Judge Joseph M. Buckner in Orange County District Court. Heard in the Court of Appeals 7 November 2013.


> *No brief filed on behalf of plaintiffs-appellees.*
>
> *Mary McCullers Reece for defendant-appellant (appeal from contempt order).*
>
> *Joey Berry, pro se, defendant-appellant (appeal from order dismissing notice of appeal).*


GEER, Judge.


Defendant Joey Berry appeals from the trial court's order holding him in contempt for violating a civil no-contact order entered pursuant to Chapter 50C of the General Statutes (the "50C order") and from the trial court's order dismissing his notice of appeal from the 50C order. With respect to the order dismissing defendant's notice of appeal from the 50C order,

defendant contends that the paper he filed was not actually a notice of appeal, but only a "notice of intent to appeal," such that it was not untimely filed under the Rules of Appellate Procedure. We hold that whether the filing was a notice of appeal or a notice of intent to appeal, the trial court properly dismissed the filing as either untimely or a nullity.

With respect to the contempt order, defendant primarily argues that the trial court improperly ordered him to pay a fine to plaintiffs in order to purge himself of contempt. We hold that precedent authorizes a purge condition consisting of a fine payable to the complaining party. However, because the trial court failed to make findings that defendant had the present ability to comply with the purge condition, we reverse the fine and remand for further proceedings.

## Facts

On 11 May 2012, plaintiffs Jennifer and David Tyll filed a verified complaint against defendant seeking a 50C order. David and Jennifer Tyll are husband and wife, and David Tyll is the brother of defendant's domestic partner, Michelle Willets.

The complaint alleged that defendant was disrespectful to Jennifer Tyll, David Tyll, and Michelle Willets' mother, Sharon Tyll, and as a result, plaintiffs told Ms. Willets that defendant was not welcome at "upcoming family events."

Defendant then sent angry emails to plaintiffs and demanded that they come to South Carolina where defendant and Ms. Willets lived. When plaintiffs refused, defendant sent an email to David Tyll's employer "suggesting horrible defamatory things." Defendant told David Tyll over the phone that the email to David Tyll's employer was the "'tip of the ice-berg.'" An email from Ms. Willets to Sharon Tyll stated that defendant, when "'forced into a fight,'" believed in "'total war'" and would not "'back down . . . until [his] opponent [was] completely defeated.'"

On 23 May 2012, the trial court entered an order pursuant to N.C. Gen. Stat. § 50C-7 (2011) in which it found that plaintiffs "suffered unlawful conduct by the defendant" in that defendant sent "numerous emails to family members" and to David Tyll's employer that contained "references to war, death and never stopping, not following rules until your opponent is fully defeated," and that made "references to worst case scenarios." Based upon its findings, the court ordered defendant to, among other things, "not visit, assault, molest, or otherwise interfere with the plaintiffs or plaintiffs [sic] family." The order was effective until 23 May 2013.

On 7 September 2012, defendant, acting *pro se*, filed a document captioned "NOTICE OF APPEAL In Forma Pauperis." The filing stated that defendant "hereby gives notice of intent to

appeal to the Court of Appeals of North Carolina" from the 50C order. The filing further stated: "The time for filing an appeal allowed by the NORTH CAROLINA RULES OF APPELLATE PROCEDURE having expired, the Defendant in this matter is preparing to petition the Honorable Court of Appeals of North Carolina for the writ of CERTIORARI in accordance with RULE 21 at the soonest point practical." Plaintiffs moved to dismiss defendant's notice of appeal under the Rules of Appellate Procedure, and the trial court entered an order dismissing defendant's notice of appeal as untimely on 18 December 2012.

On 11 October 2012, plaintiffs filed a verified motion to hold defendant in contempt of the 50C order. The motion alleged that defendant willfully violated the 50C order on 23 June 2012 by emailing plaintiffs' family member, Sharon Tyll. On 22 October 2012, defendant filed a "MOTION FOR PROCEEDING/APPEAL IN FORMA PAUPERIS," with an attached affidavit, requesting that the court "issue an order allowing the Defendant to proceed as an indigent" and appoint him counsel.

It appears that the Orange County Clerk of Superior Court summarily denied the motion on 23 October 2012 by handwriting "Motion is denied" on the motion itself and signing and refiling the motion. On 29 October 2012, defendant timely appealed the denial of his motion to proceed as an indigent to the district

court pursuant to N.C. Gen. Stat. §§ 7A-251(b) (2011) and 1-301.1(b) (2011).

On 2 November 2012, defendant filed a response to the contempt motion in which he admitted sending the email to Sharon Tyll, but disputed that the email was harassing and that the 50C order was specific enough to bar communication with Sharon Tyll. Defendant's response also argued that the denial of his motion to proceed as an indigent, which forced him to file his response without the assistance of appointed counsel, violated his due process rights under the United States and North Carolina Constitutions.

Following an 11 December 2012 hearing on the contempt motion, at which defendant was not present, the trial court entered an order on 18 December 2012 holding defendant in contempt. The trial court found that defendant violated the 50C order by sending Sharon Tyll, a family member of plaintiffs, an email on 23 June 2012; that "the lawful purpose [of the 50C order] would still be served with compliance with same, i.e. the Defendant should continue to be restrained from any contact with Plaintiffs or their family"; and that "Defendant is in willful contempt of said order, as he has the ability to comply with same and refrain from sending the email."

The court ordered that "[t]o purge himself of [the] contempt, Defendant shall pay to the Plaintiffs $2500.00 on or before January 11, 2013" and that "each individual violation of the May 23, 2012 [order] shall result in at least another $2500.00 purge for each violation." In addition, the order "further restrain[ed]" defendant by (1) preventing defendant from contacting plaintiffs, their employers, or their family members, other than Michelle Willets, by any means; (2) preventing defendant from posting any information about plaintiffs or their family members, other than Michelle Willets, on the internet; and (3) ordering defendant to remove any internet posts about plaintiffs or their family members, other than Michelle Willets, within seven days from entry of the order. Defendant timely appealed the contempt order to this Court.

On 22 January 2013, defendant, still acting pro se, filed a second "MOTION FOR PROCEEDING/APPEAL IN FORMA PAUPERIS," along with the same affidavit attached to his first motion to proceed as an indigent, again requesting that the trial court "issue an order allowing the Defendant to proceed as an indigent." On 23 January 2013, the Orange County Clerk of Superior Court entered an order allowing defendant to proceed as an indigent "[i]n

accordance with NCGS § 1-288 and solely for the purposes stated therein."

Defendant filed a motion for appointment of appellate counsel on 11 April 2013. On 14 June 2013, the trial court entered an order appointing appellate counsel for defendant "with regards to any contempt motion or contempt orders." On 29 July 2013, defendant filed a pro se brief addressing his appeal from the dismissal of his notice of appeal from the 50C order, and defendant's appointed counsel filed a brief addressing his appeal from the contempt order.

I

We first address defendant's appeal from the dismissal of his "notice of appeal" from the 50C order. Defendant argues on appeal that the trial court erred in dismissing his notice of appeal as untimely under the Rules of Appellate Procedure because the filing was not actually a notice of appeal but was, rather, only a "notice of intent to appeal" that was not subject to the Rules of Appellate Procedure. Defendant further argues that since the trial court's order dismissing the notice of appeal relied upon the Rules of Appellate Procedure as grounds for dismissing the appeal, the court was without jurisdiction to dismiss the filing that, he argues, did not create a valid appeal and was not, therefore, subject to the appellate rules.

Defendant's "NOTICE OF APPEAL" purported to give "notice of intent to appeal" the 23 May 2012 50C order, but recognized that the time for taking an appeal had already expired. The notice, therefore, stated defendant was "preparing" to petition this Court for a writ of certiorari to review the 50C order.

Given that defendant's filing was captioned a "NOTICE OF APPEAL" and stated that defendant gave "notice of intent to appeal to the Court of Appeals of North Carolina," the trial court reasonably treated the filing as a notice of appeal. Assuming the filing was a notice of appeal, defendant admitted in the filing itself, and again recognizes on appeal, that the notice was untimely. *See* N.C.R. App. P. 3.

Although defendant argues that plaintiffs' motion to dismiss the appeal was improper since it was not supported by affidavits or certified copies of docket entries showing defendant took untimely action as required by Rule 25 of the Rules of Appellate Procedure, we believe that Rule 25's requirements for proof of the appellant's untimely action is satisfied when, as here, the notice of appeal itself expressly states that the appeal is untimely. The trial court's dismissal of the notice as untimely was, under these circumstances, proper. *See* N.C.R. App. P. 25(a).

Assuming, as defendant contends, that the filing was not a notice of appeal but, rather, solely a "notice of intent to appeal" that did not itself constitute a valid appeal, the trial court nonetheless properly dismissed the filing as a nullity. Defendant has pointed to, and we have found, no authority allowing defendant to file a "notice of intent to appeal" in a civil case, and no authority limiting the trial court's jurisdiction to dismiss such an ineffectual filing.

Defendant's contention that the trial court lacked jurisdiction to dismiss the filing under the Rules of Appellate Procedure fails to recognize that the trial court already had jurisdiction over the case due to the proper filing of plaintiffs' complaint and the issuance of a summons. *See* N.C.R. Civ. P. 3(a) ("A civil action is commenced by filing a complaint with the court."). *See Estate of Livesay ex rel. Morley v. Livesay*, ___ N.C. App. ___, ___, 723 S.E.2d 772, 774 (2012) ("Without a proper complaint or summons under Rule 3 of the Rules of Civil Procedure, an action is not properly instituted and the court does not have jurisdiction."). The court's jurisdiction over the case gave it jurisdiction to dismiss a filing in the case that defendant himself asserts was a nullity. We, therefore, hold the trial court did not err in dismissing defendant's notice of appeal from the 50C order.

II

Defendant next contends that the trial court erred in failing to consider defendant's request for appointed counsel. Defendant argues that the trial court's failure to address his request for counsel violated his due process rights under the United States and North Carolina Constitutions.

In civil contempt proceedings, the question whether an indigent, alleged contemnor is entitled to counsel under the Due Process Clause of the Fourteenth Amendment to the United States Constitution is a determination made on a case-by-case basis. *See Turner v. Rogers*, ___ U.S. ___, ___, 180 L. Ed. 2d 452, 466, 131 S. Ct. 2507, 2520 (2011) (holding that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)").

In contrast, in criminal contempt proceedings, the Sixth and Fourteenth Amendments to the United States Constitution generally "require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *See Scott v. Illinois*, 440 U.S. 367, 374, 59 L. Ed. 2d 383, 389, 99 S. Ct. 1158, 1162 (1979); *Turner*, ___ U.S. at

___, 180 L. Ed. 2d at 461–62, 131 S. Ct. at 2516 (observing that Sixth Amendment right of an indigent criminal defendant to appointed counsel "applies to *criminal contempt* proceedings (other than summary proceedings)").

Given the differences between an indigent individual's right to appointed counsel in a civil contempt proceeding and his right to counsel in a criminal contempt proceeding, we must initially determine whether the contempt proceeding and order in this case involved civil or criminal contempt. "Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties." *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985). "Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice." *Id.*

Here, the contempt order did not specify whether the trial court held defendant in civil or criminal contempt. The order simply stated that the court was holding defendant in contempt based upon defendant's willful violation of the 50C order.

N.C. Gen. Stat. § 50C-10 (2013) provides that "[a] knowing violation of an order entered pursuant to [Chapter 50C] is punishable as contempt of court." Accordingly, all Chapter

50C orders "shall include the following notice, printed in conspicuous type: 'A knowing violation of a civil no-contact order shall be punishable as contempt of court which may result in a fine or imprisonment.'" N.C. Gen. Stat. § 50C-5(c) (2013).

Civil contempt proceedings are initiated, among other ways, "by motion pursuant to G.S. 5A-23(a1)." N.C. Gen. Stat. § 5A-23(a) (2013). "Failure to comply with an order of a court is a continuing civil contempt as long as: (1) The order remains in force; (2) The purpose of the order may still be served by compliance with the order; (2a) The noncompliance by the person to whom the order is directed is willful; and (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order." N.C. Gen. Stat. § 5A-21(a) (2013).

Further, "[i]f civil contempt is found, the judicial official must enter an order finding the facts constituting contempt and specifying the action which the contemnor must take to purge himself or herself of the contempt." N.C. Gen. Stat. § 5A-23(e). With regard to punishment for civil contempt, N.C. Gen. Stat. § 5A-22(a) (2013) provides: "A person imprisoned for civil contempt must be released when his civil contempt no longer continues. The order of the court holding a person in

civil contempt must specify how the person may purge himself of the contempt."

Here, plaintiffs initiated the contempt proceeding with a motion for contempt, pursuant to the procedures for civil contempt set out in N.C. Gen. Stat. § 5A-23(a1). The trial court's order likewise indicates the court was holding defendant in civil contempt, as the order included each of the requisite findings for civil contempt specified in N.C. Gen. Stat. § 5A-21(a) and expressed the court's intent to include a "purge" clause pursuant to N.C. Gen. Stat. § 5A-23(e).

At the contempt hearing, the trial court's statements indicate it was rendering a civil contempt order in an effort to force defendant to comply with the 50C order:

> [PLAINTIFF'S COUNSEL:] I do want the Court to be aware that there have been other emails sent since that one, and we are now seeking some different relief. We're asking you to consider to bar him from any Internet communication about the Tyll family, to or from them or about them, in any form including a website.
>
> So, we want him to stay off the Internet to or from any family member of the Tyll's, and we want him to stop posting about this family. We don't want any other contact, through telephone or personal, and that's all ready [sic] been ordered, and we are asking you [sic] consider to allow an order against him, a monetary order of $2,500.

> THE COURT: *Well, I think that's what's gonna [sic] be necessary because he's obviously -- has no boundaries.*
>
> *Okay. The Court will find him in contempt, [indecipherable], enter a purge amount -- a bond amount in the amount of $2,500 to be doubled each -- for each violation.*

(Emphasis added.)

Finally, construing the order as an order for civil contempt is consistent with N.C. Gen. Stat. § 50C-10's provision for contempt sanctions for a violation of a 50C order and N.C. Gen. Stat. § 5A-25 (2013) general rule that "[w]henever the laws of North Carolina call for proceedings as for contempt, the proceedings are those for civil contempt . . . ." The trial court's order was, therefore, an order for civil contempt. *Cf. Reynolds v. Reynolds*, 147 N.C. App. 566, 576-81, 557 S.E.2d 126, 132-35 (2001) (John, J., dissenting) (treating order as one for criminal contempt based on, among other factors, lack of purge condition in sanction imposed, trial court's characterization of contempt as criminal and not civil, and trial court's apparent desire to punish contemnor as shown by trial court's statements at hearing and nature of sanctions imposed), *rev'd per curiam sub nom. Reynolds v. Reynolds (now Flynn) for reasons stated in the dissent*, 356 N.C. 287, 569 S.E.2d 645 (2002).

Turning to defendant's arguments on appeal, after plaintiffs filed their contempt motion, defendant moved the trial court to be allowed to proceed as an indigent and attached an affidavit of indigency to his motion. The clerk of superior court summarily denied defendant's motion, and defendant appealed that denial to the district court judge. Defendant then filed a response to plaintiffs' contempt motion that again declared defendant's indigency and asserted as an "ADDITIONAL DEFENSE[]" that the denial of defendant's motion to proceed as an indigent, forcing defendant to respond to the contempt motion without appointed counsel, violated defendant's state and federal constitutional rights to due process.

N.C. Gen. Stat. § 7A-451(a)(1) (2013) provides that "[a]n indigent person is entitled to services of counsel in . . . [a]ny case in which imprisonment, or a fine of five hundred dollars ($500.00), or more, is likely to be adjudged." "The clerk of superior court is authorized to make a determination of indigency and entitlement to counsel, as authorized by this Article." N.C. Gen. Stat. § 7A-452(c)(1) (2013). However, a "judge of superior or district court having authority to determine entitlement to counsel in a particular case . . . may, if he finds it appropriate, change or modify the determination made by the clerk . . . ." N.C. Gen. Stat. § 7A-452(c)(2).

Given defendant's appeal to the district court judge from the denial of his motion to proceed as an indigent, and his separate request for appointment of counsel in his response to the contempt motion, the trial court in this case had the authority to modify the clerk's denial of defendant's motion to proceed as an indigent, to find defendant indigent, and to appoint defendant counsel. However, we need not determine whether defendant was entitled to counsel in this civil contempt proceeding since defendant failed to seek a ruling from the trial court on his request for counsel, failed to attend the contempt hearing where he could have had his motion heard, and failed to move to continue the matter.

Our Supreme Court has held that "a lawyer cannot properly represent a client with whom he has no contact." *Dunkley v. Shoemate*, 350 N.C. 573, 578, 515 S.E.2d 442, 445 (1999). This is so because "'North Carolina law has long recognized that an attorney-client relationship is based upon principles of agency,' and '[t]wo factors are essential in establishing an agency relationship: (1) The agent must be authorized to act for the principal; and (2) The principal must exercise control over the agent.'" *Id.* at 577, 515 S.E.2d at 444 (quoting *Johnson v. Amethyst Corp.*, 120 N.C. App. 529, 532-33, 463 S.E.2d 397, 400 (1995)).

Here, the trial court could not appoint counsel to represent defendant at the hearing since defendant was not present and could neither authorize a particular attorney to be his agent nor exercise control over that attorney. *See id.* at 575, 578, 515 S.E.2d at 443, 445 (holding law firm hired by insurer could not represent defendant insured who had absconded since insured had never authorized firm to represent him). Since defendant also failed to move to continue the matter, there was no relief requested of the court pursuant to which defendant could be appointed counsel whose representation he could authorize.

In addition, defendant's argument is not properly preserved for appeal since, although defendant appealed the denial of his motion to proceed as an indigent and requested the appointment of counsel in his response to the contempt motion, defendant failed to attend the contempt hearing and, therefore, failed to obtain a ruling on his appeal and request for counsel after the initial denial of his motion to proceed as an indigent. *See* N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review . . . [i]t is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."); *Gilreath v. N.C. Dep't of Health & Human Servs.*, 177 N.C. App. 499, 501, 629 S.E.2d 293, 294

(holding plaintiff failed to preserve argument that court erred in failing to grant plaintiff's motion to strike paragraphs from affidavits since plaintiff never obtained ruling on motion), *aff'd per curiam*, 361 N.C. 109, 637 S.E.2d 537 (2006). We, therefore, hold that the trial court did not violate defendant's due process rights by conducting the contempt hearing, in defendant's absence, and holding defendant in contempt without further considering defendant's request for appointed counsel.

III

Defendant additionally argues that the trial court erred in finding in its contempt order that (1) Sharon Tyll was a member of plaintiffs' family protected by the 50C order; (2) the 50C order prohibited defendant from simply "contacting" plaintiffs or their family; and (3) defendant continued to harass and interfere with plaintiffs through electronic means following entry of the 50C order. "The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." *Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997).

The 50C order ordered defendant to, among other things, "not visit, assault, molest, or otherwise interfere with the plaintiffs or plaintiffs [sic] family." The trial court found

that "Sharon Tyll is a family member of the Defendants [sic] who is protected from harassment and interference by the May 23, 2012 Order."  Sharon Tyll testified at the hearing that she was plaintiff David Tyll's mother and considered herself his family member.

Defendant, however, argues that he was in a relationship with Michelle Willets, David Tyll's sister, throughout the life of this case and that a reading of the 50C order that prohibited certain contact with Sharon Tyll would be unreasonable because such an interpretation could just as easily prohibit defendant's contact with Ms. Willets.  Defendant's argument fails to recognize that the substance of the email he sent to Sharon Tyll, for which defendant was found in contempt, demonstrates defendant understood Sharon Tyll to be a member of plaintiffs' family covered by the relevant provision of the 50C order. Defendant wrote: "Please stop harassing us.  *You*, David and Jenny *have gotten a court order severing Michelle (and me) from your family for at least eleven more months*.  Your attempts to call us are torturous to Michelle.  Under no circumstance is any form of communication welcome to either Michelle or me." (Emphasis added.)  As an attachment to defendant's response to plaintiffs' contempt motion, this email was evidence before the trial court that supported the court's finding that Sharon Tyll

was considered part of plaintiffs' family for purposes of the 50C order.

Defendant further challenges the trial court's finding that the 50C order prohibited defendant "from *contacting*, visiting, molesting, or otherwise interfering with the Plaintiffs or the Plaintiff's [sic] family." (Emphasis added.) Defendant asserts that the relevant provision of the 50C order only ordered him to "not visit, assault, molest, or otherwise interfere with the plaintiffs or plaintiffs [sic] family." He argues that he was, therefore, not barred from merely "contacting" plaintiffs' family.

Even assuming that the trial court's description of the underlying order was not completely consistent with the actual terms of the order, that specific finding, describing the underlying order, was not necessary to support the trial court's conclusion that defendant wilfully violated the 50C order by emailing Sharon Tyll. Defendant does not challenge the court's finding that "Defendant violated the Order on June 23, 2012, by sending an email from [defendant's email address] to [Sharon Tyll's email address]. That email was received by Sharon Tyll and it bothered her."

This unchallenged finding regarding Sharon Tyll being "bothered" by the email falls within the undisputed term of the

50C order that defendant not "interfere with" plaintiffs' family. Because the finding as to "contacting" was unnecessary to the trial court's conclusions, any error did not prejudice defendant. *See Blalock Elec. Co. v. Grassy Creek Dev. Corp.*, 99 N.C. App. 440, 445, 393 S.E.2d 354, 357 (1990) ("[A]ny error with regard to this finding would not affect the court's judgment where other findings supported by competent evidence would be sufficient to support the judgment.").

Defendant also challenges the finding that "Defendant has continued to harass and interfere with the Plaintiffs through electronic means since the entry of the May 23, 2012 restraining order." Having already observed that the trial court was presented with evidence of the email sent from defendant to Sharon Tyll, we note that in that email, defendant told plaintiff David Tyll's mother, Sharon Tyll, to stop "harassing" defendant, and stated that Sharon Tyll's "attempts to call" her daughter, Michelle Willets, were "torturous." Defendant further told Sharon Tyll that "[u]nder no circumstance" was "any form of communication welcome to" her daughter. Sharon Tyll testified that the email continued to bother her.

The email also specifically referred to both plaintiffs, by name, and Sharon Tyll as "hav[ing] gotten a court order severing Michelle (and [defendant]) from your family for at least eleven

more months." This evidence permitted a reasonable inference that plaintiff David Tyll, Sharon Tyll's son, would feel "harass[ed]" and "interfere[d] with" by defendant's email to his mother, sent after entry of the 50C order sought by plaintiffs to prevent just such communications. We, therefore, hold that the court's finding was supported by competent evidence.

IV

Defendant's final argument is that the trial court erred in imposing sanctions for civil contempt that exceeded the trial court's statutory contempt powers. First, defendant contends that the court erred in requiring defendant to pay a "purge" amount of $2,500.00 since that sanction actually operated as a fine or monetary award against defendant, and, he asserts, there is no legal basis for imposing a fine or monetary award against a civil contemnor.

The contempt order in this case ordered that "[t]o purge himself of [the] contempt, Defendant shall pay to the Plaintiffs $2500.00 on or before January 11, 2013." The order further provided, with respect to any future violations of the 50C order, that "each individual violation of the May 23, 2012 [order] shall result in at least another $2500.00 purge for each violation."

As observed by defendant, N.C. Gen. Stat. § 5A-21(b) provides that "[a] person who is found in civil contempt may be imprisoned as long as the civil contempt continues." However, defendant's argument that there are no further statutorily permitted sanctions for civil contempt fails to recognize that (1) N.C. Gen. Stat. § 50C-10 provides that "[a] knowing violation of an order entered pursuant to [Chapter 50C] is punishable as contempt of court"; (2) N.C. Gen. Stat. § 5A-25 provides that "[w]henever the laws of North Carolina call for proceedings as for contempt, the proceedings are those for civil contempt"; and (3) N.C. Gen. Stat. § 50C-5(c) provides that all Chapter 50C no-contact orders "shall include the following notice, printed in conspicuous type: 'A knowing violation of a civil no-contact order shall be punishable as contempt of court which *may result in a fine* or imprisonment.'" (Emphasis added.) We believe that these statutes, read together, support the inference that fines are statutorily permitted sanctions for civil contempt proceedings based upon violations of Chapter 50C no-contact orders.

Our Supreme Court has indicated that fines are appropriate sanctions for civil contempt in North Carolina:

> The purpose of civil contempt is not to punish; rather, its purpose is to use the court's power to impose *fines* or imprisonment as a method of coercing the

> defendant to comply with an order of the court. . . . Accordingly, defendant in a civil contempt action will be *fined* or incarcerated only after a determination is made that defendant is capable of complying with the order of the court. The imprisonment or *fine* is lifted as soon as defendant decides to comply with the order of the court, or when it becomes apparent that compliance with the order is no longer feasible. . . . In the recently enacted contempt statute, civil contempt is carefully defined along these lines. G.S. 5A-21, *et seq.* and Official Commentary.

*Jolly v. Wright*, 300 N.C. 83, 92, 265 S.E.2d 135, 142 (1980) (emphasis added), *overruled on other grounds by McBride v. McBride*, 334 N.C. 124, 431 S.E.2d 14 (1993). *See also McBride*, 334 N.C. at 130, 431 S.E.2d at 18 (observing that "a defendant in a civil contempt action should not be fined or incarcerated for failing to comply with a court order without a determination by the trial court that the defendant is presently capable of complying").

This Court has similarly referred to the propriety of a fine as a sanction for civil contempt: "'A defendant in a civil contempt action will be fined or incarcerated only after a determination is made that the defendant is capable of complying with the order of the court.'" *Oakley v. Oakley*, 165 N.C. App. 859, 864, 599 S.E.2d 925, 929 (2004) (quoting *Reece v. Reece*, 58 N.C. App. 404, 406-07, 293 S.E.2d 662, 663-64 (1982)).

Defendant further contends, however, that even if a fine is a permissible sanction for civil contempt, this Court has held that a court may not award damages or costs to a private party in a civil contempt proceeding. In support of his argument, defendant cites *Baxley v. Jackson*, 179 N.C. App. 635, 634 S.E.2d 905 (2006) and *Green v. Crane*, 96 N.C. App. 654, 386 S.E.2d 757 (1990). *See Baxley*, 179 N.C. App. at 640, 634 S.E.2d at 908 ("Because contempt is considered an offense against the State, rather than an individual party, 'damages may not be awarded to a private party because of any contempt[.]'" (quoting *M.G. Newell Co. v. Wyrick*, 91 N.C. App. 98, 102, 370 S.E.2d 431, 434 (1988))); *Green*, 96 N.C. App. at 659, 386 S.E.2d at 760 ("'[C]ontempt proceedings are *sui generis* and criminal in nature. Although labeled "civil" contempt, a proceeding as for contempt is by no means a civil action or proceeding to which G.S. 6-18 (when costs shall be allowed to plaintiff as a matter of course), or G.S. 6-20 (allowance of costs in discretion of court) would apply.'" (quoting *United Artists Records, Inc. v. E. Tape Corp.*, 18 N.C. App. 183, 188, 196 S.E.2d 598, 601 (1973))).

"The word 'damages' is defined as compensation which the law awards for an injury[;] 'injury' meaning a wrongful act which causes loss or harm to another." *Cherry v. Gilliam*, 195

N.C. 233, 235, 141 S.E. 594, 595 (1928). *See also Black's Law Dictionary* 445 (9th ed. 2009) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). "[C]ompensation," in turn, has been defined as "[p]ayment of damages, or any other act that a court orders to be done by a person who has caused injury to another." *Id.* at 322. "In theory, compensation makes the injured person whole." *Id.*

While damages or costs may not be awarded to plaintiffs in a civil contempt proceeding, this Court has expressly acknowledged that a person found in civil contempt may be required to pay a fine to the opposing party. In *Bishop v. Bishop*, 90 N.C. App. 499, 505, 369 S.E.2d 106, 109 (1988), this Court looked to the character of the relief ordered in a contempt proceeding to determine whether that proceeding involved civil or criminal contempt. This Court held that civil contempt could involve a monetary payment "if the monies are either paid to the complainant or defendant can avoid payment to the court by performing an act required by the court." *Id.* The Court specifically held that civil contempt can involve a fine "'when it is paid to the complainant'" or if payable to the court "'when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.'"

*Id.* at 504, 369 S.E.2d at 108-09 (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632, 99 L. Ed. 2d 721, 731, 108 S. Ct. 1423, 1429 (1988)).

In this case, there is no indication in the record that the award of $2,500.00 payable to plaintiffs for defendant's contempt, or the possibility of future payments of "at least another $2500.00" for future violations of the 50C order, were intended to compensate plaintiffs for loss or injury from defendant's contempt or to pay the costs of the action incurred by plaintiffs. The payments were denominated "purge" conditions in the order, indicating the court intended the payments to coerce defendant into compliance with the 50C order rather than to compensate plaintiffs for defendant's contempt. *See Cox v. Cox*, 133 N.C. App. 221, 226, 515 S.E.2d 61, 65 (1999) ("A court order holding a person in civil contempt must specify how the person may purge himself or herself of the contempt. The purpose of civil contempt is not to punish but to coerce the defendant to comply with a court order." (internal citations omitted)).

Further, at the hearing, in response to plaintiffs' counsel's request for a "monetary order of $2,500" in response to defendant's contempt, the trial court stated: "Well, I think that's what's gonna [sic] be necessary because he's obviously --

has no boundaries.  Okay.  The Court will find him in contempt, [indecipherable], enter a purge amount -- a bond amount in the amount of $2,500 to be doubled each -- for each violation."  The foregoing indicates that, in this case, the court entered a monetary award for civil contempt payable to plaintiffs in order to coerce defendant into compliance with the 50C order and not in order to compensate plaintiffs for defendant's contempt.  The trial court, therefore, did not err in ordering defendant to pay a fine to plaintiffs.

Defendant further argues that the sanction imposed for civil contempt was invalid because there was no effective purge condition.  To hold a person in civil contempt, "the judicial official must enter an order . . . specifying the action which the contemnor must take to purge himself or herself of the contempt."  N.C. Gen. Stat. § 5A-23(e).  Here, the trial court ordered that in order "[t]o purge himself of [the] contempt, Defendant shall pay to the Plaintiffs $2500.00 on or before January 11, 2013."

Defendant contends that although "this Court has considered cases involving monetary awards payable on findings of civil contempt, the instances of such awards are limited to those cases where the underlying order imposed an obligation of payment, as in a child support case."  He then argues that "[i]n

the case of the child support obligor, the payment of arrears is partial compliance with the order being enforced. Thus, the obligor may avoid incarceration by making payment in compliance with the underlying child support order."

However, our courts have also held that requiring a contemnor to pay attorneys' fees in order to purge himself of contempt may be an appropriate purge condition. These cases do not involve payments that would have been required by the underlying order that the contemnor violated. *See, e.g., Eakes v. Eakes*, 194 N.C. App. 303, 312, 669 S.E.2d 891, 897 (2008) ("North Carolina courts have held that the contempt power of the trial court includes the authority to require the payment of reasonable attorney's fees to opposing counsel as a condition to being purged of contempt for failure to comply with a child support order."); *Middleton v. Middleton*, 159 N.C. App. 224, 227, 583 S.E.2d 48, 49-50 (2003) ("This Court has held that the contempt power of the district court includes the authority to award attorney fees as a condition of purging contempt for failure to comply with an order."). *See also Hartsell v. Hartsell*, 99 N.C. App. 380, 392, 393 S.E.2d 570, 577 (1990) (observing that when party has been held in contempt for violating order requiring transfer of property, trial court had authority to order contemnor to transfer property or its present

value as condition of purging contempt), *aff'd per curiam*, 328 N.C. 729, 403 S.E.2d 307 (1991).

We see no basis for distinguishing a fine payable to the moving party from these types of payments. Therefore, the trial court included a proper purge condition when it required defendant to pay the fine to plaintiffs in order to purge himself of contempt.

Defendant next argues that the contempt order's $2,500.00 payments for present and any future violations of the 50C order were invalid because the trial court made no findings concerning defendant's ability to pay, at the time of the contempt hearing or at any point in the future, respectively, the amount of $2,500.00. We agree.

This Court has held that North Carolina's civil contempt statutes "require that a person have the present ability to comply with the conditions for purging the contempt before that person may be imprisoned for civil contempt." *McMiller v. McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985). We see no reason why a monetary sanction should be treated differently. *See Jolly*, 300 N.C. at 92, 265 S.E.2d at 142 ("[D]efendant in a civil contempt action will be fined or incarcerated only after a determination is made that defendant is capable of complying with the order of the court.").

The contempt order in this case contains no findings that defendant, at the time of the contempt hearing or otherwise, had the ability to pay a $2,500.00 award to plaintiffs. In fact, the only evidence in the record regarding defendant's ability to pay is defendant's affidavit of indigency attached to his two motions to proceed as indigent. That affidavit stated that defendant and his partner, Ms. Willets, each have no direct source of income and receive room and board in exchange for caring for defendant's mother. The affidavit further stated defendant owned no real property; defendant owned some personal property but any requirement to liquidate that property would "substantially affect[]" defendant's ability to care for his mother; and the total value of defendant's "cash" was "less than $2500.00." The trial court, therefore, erred in requiring the monetary payments without first finding defendant was presently able to comply with the $2,500.00 fine imposed as a result of defendant's past contempt or would be able to comply in the future with any $2,500.00 fines imposed as a result of any further violations of the 50C order.

Finally, defendant contends that the trial court exceeded its authority in this contempt proceeding by imposing additional restrictions on defendant's contact with plaintiffs and others in the contempt order since defendant was not given notice of

any request for sanctions beyond those allowed for contempt or of a hearing to modify the 50C order. We do not agree.

The 23 May 2012 50C order ordered defendant to "not visit, assault, molest, or otherwise interfere with the plaintiffs or plaintiffs [sic] family"; to "cease harassment of the plaintiff"; to "not abuse or injure the plaintiff"; to "not contact the plaintiffs by telephone, written communication, or electronic means"; and to "not enter or remain present at the plaintiff's residence . . . [or] place of employment."

The contempt order contained the following provisions in the decretal portion of the order:

4. The Court hereby further restrains the Defendant from the following acts:

a) Defendant, Joey Berry, shall not contact by phone, internet, mail or any other means any employer or family member of Jennifer and David Tyll, except Michelle Willets, directly or indirectly or through a third party, even by using a pseudonym or by acting as power of attorney or attorney in fact for any other person.

b) Defendant, Joey Berry, shall not post or allow to be posted any information of any kind whatsoever referring to, referencing, or stating the names of the Plaintiffs or any member of their family, except Michelle Willets, on the internet, on any blog, forum, in any email, in any electronic newspaper or magazine,

> on any social website such as Facebook, using his name or any pseudonym.
>
> c)  Within 7 days from the date of entry of this order, the Defendant shall remove from any internet posting, web sites and/or postings, blogs, social media, and other communications not limited to the internet, if these communications relate to or reference the Plaintiffs or the names of the Plaintiffs or any of their family members other than Michelle Willets, even if the communication, posting, blog, email, ect. [sic], was published using a pseudonym or by acting as power of attorney or attorney in fact for any other person.

We initially note that these provisions do not necessarily place any further restrictions on defendant beyond those set out in the original 50C order. They may be viewed as simply specifying the behaviors that reasonable people would understand to be subsumed within the terms of the original order -- a clarification that the trial court likely viewed as necessary given defendant's apparent intention to try to avoid compliance with the 50C order by a restrictive reading of the order.

Defendant cites no authority in support of his argument that the trial court erred by including decretal paragraph 4. Therefore, he has not properly presented this issue for our review, and we do not address it.  *See Horne v. Cumberland Cnty.*

*Hosp. Sys., Inc.*, __ N.C. App. __, __, 746 S.E.2d 13, 18 (2013) ("With regard to her substantive due process claim, plaintiff, in her brief, fails to cite any legal authority in support of her contention on this issue. We, therefore, deem this argument abandoned on appeal pursuant to Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure.").

## Conclusion

In sum, we affirm the trial court's order dismissing defendant's notice of appeal from the 50C order. We hold that the court did not violate defendant's right to due process by not further considering defendant's request for appointed counsel and that the challenged findings of fact in the contempt order were either supported by the evidence or unnecessary to support the court's conclusion that defendant was in contempt of the 50C order. We also affirm the trial court's decision to impose a fine payable to plaintiffs, but we reverse as to the amount and remand for the trial court to make appropriate findings regarding defendant's present ability to pay the fine.

Affirmed in part; reversed and remanded in part.

Judges STEPHENS and ERVIN concur.