An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-504

Filed 2 July 2025

Chatham County, No. 22JT000007-180

IN THE MATTER OF: M.L.G., Jr.

Appeal by Respondent-Father from order entered 31 January 2024 by Judge Sherri Murrell in Chatham County District Court. Heard in the Court of Appeals 11 February 2025.

> *Peter Wood, for Respondent-Appellant-Father.*
>
> *Jane R. Thompson, for Petitioner-Appellee Chatham County Department of Social Services.*
>
> *Rosenwood, Rose & Litwak, PLLC, by Nancy S. Litwak, for the Guardian ad Litem.*

Respondent-Father appeals from the trial court's 31 January 2024 order terminating his parental rights to M.L.G., Jr. ("Montgomery").[1] On appeal, Respondent-Father asserts he was denied a fair hearing and effective assistance of counsel. After careful review, we remand to allow the trial court to develop the record as to Respondent-Father's ineffective assistance of counsel ("IAC") claim.

---

[1] Pseudonym used to protect the identity of the juvenile and for ease of reading. *See* N.C. R. App. 42(b).

## I.     Factual & Procedural Background

On 11 January 2006, Respondent-Father was convicted of committing or attempting to commit a lewd act on a child under the age of sixteen.  Thereafter, Respondent-Father was arrested on 22 April 2021 and was convicted of and incarcerated for failing to register as a sex offender.  In June 2021, Mother[2] gave birth to Montgomery, who tested positive for THC at birth.  On 19 January 2022, while Montgomery was in Mother's custody, Chatham County Department of Social Services ("DSS") filed a petition alleging that Montgomery was a neglected juvenile and obtained nonsecure custody.  Respondent-Father was served with the juvenile summons and notice of hearing at his South Carolina detention center.

On 1 February 2022, the trial court held a nonsecure custody hearing. Respondent-Father did not attend the hearing but was represented by his attorney. On 26 April 2022, DSS and the Guardian ad Litem made phone contact with Respondent-Father in prison.  Respondent-Father communicated his wishes to be reunited with Montgomery upon his release from incarceration.

On 12 May 2022, the trial court conducted an adjudication and disposition hearing.  Respondent-Father, though still incarcerated in South Carolina, appeared in court with his attorney.  The trial court adjudicated Montgomery as a neglected juvenile and ordered Respondent-Father to complete any services requested by DSS

---

[2] Mother relinquished her parental rights and is not a party on appeal.

that were available during his incarceration. On 1 August 2022, Respondent-Father was released from incarceration.

On 25 August 2022, the trial court conducted a permanency-planning hearing. Respondent-Father was not present but was represented by his attorney. The trial court continued Montgomery's placement with DSS and selected a primary plan of reunification with a secondary plan of adoption. The trial court ordered Respondent-Father to submit to random drug screens, complete a psychosexual assessment, comply with sex offender registration requirements, and engage in a family services agreement with DSS. Additionally, the trial court granted Respondent-Father supervised virtual visitation, at least once per week for up to thirty minutes. The trial court noted Respondent-Father's failure to cooperate with his case plan may result in an order ceasing reunification efforts.

On 30 November 2022, the trial court held another permanency-planning hearing. Respondent-Father failed to appear but was represented by his attorney. The trial court made eighteen findings of fact, including that Respondent-Father had not exercised any visitation with Montgomery. The trial court also found reunification was no longer recommended, in part because placement with Respondent-Father within six months was unlikely, Respondent-Father was not actively participating or cooperating with the necessary services for reunification, and he had remained unavailable to the trial court, DSS, and the Guardian ad Litem. The trial court changed the permanency plan to a primary plan of adoption and a

secondary plan of reunification. It also concluded that proceeding with the termination of Respondent-Father's parental rights was necessary to achieve the permanent plan of adoption.

On 24 May 2023, the trial court conducted another permanency-planning hearing. Respondent-Father failed to appear but was represented by his attorney. The trial court continued Montgomery's placement with DSS and did not change the permanent plan. A copy of the 24 May 2023 permanency-planning order was served upon Respondent-Father's attorney by email.

On 9 August 2023, DSS moved to terminate Respondent-Father's parental rights on the grounds of neglect, willful abandonment, failure to make reasonable progress, and failure to engage in reunification efforts. A notice of the motion seeking termination of parental rights was served upon Respondent-Father's trial counsel. On 11 August 2023, Respondent-Father, through his trial counsel, filed responsive pleadings and asked the trial court to deny and dismiss the motion.

On 9 November 2023, the trial court conducted a termination hearing. The trial court admitted a court report prepared by a DSS social worker and the Guardian ad Litem without objection. Additionally, the trial court admitted a copy of a Bureau of Prisons inmate search conducted by DSS, revealing Respondent-Father was again incarcerated and would not be released until August 2024. Respondent-Father's trial counsel did not comment on Respondent-Father's incarceration or explain his absence. Additionally, Respondent-Father's trial counsel did not offer evidence or

question any witnesses at the hearing. The trial court ultimately terminated Respondent-Father's parental rights due to neglect, willful failure to make reasonable progress, and abandonment. The trial court also concluded that termination was in Montgomery's best interests. On 22 January 2024, the trial court entered its order terminating Respondent-Father's parental rights. Respondent-Father timely appealed.

## II.     Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7B-1001(a)(7) (2023).

## III.     Issue

The sole issue is whether Respondent-Father received IAC.

## IV.     Analysis

On appeal, Respondent-Father contends his trial counsel was deficient because he failed to advocate on Respondent-Father's behalf during the termination hearing. Respondent-Father emphasizes that trial counsel "spoke eight times during the termination hearing," "uttered around two dozen words," and "did nothing to advocate" for him. Respondent-Father also argues the trial court erred by failing to question trial counsel about Respondent-Father's absence.

Our Juvenile Code affords parents a statutory right to the assistance of counsel in all termination proceedings, including court-appointed counsel for indigent parents who have not waived that right. *See* N.C. Gen. Stat. § 7B-1101.1(a) (2023). Included in this right is "the right to effective assistance of counsel." *In re Bishop*, 92

N.C. App. 662, 665, 375 S.E.2d 676, 678 (1989). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) [his] counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) [his] attorney's performance was so deficient [he] was denied a fair hearing." *In re J.A.A.*, 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005).

"When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S. Ct. 1388, 1395, 71 L. Ed. 2d 599, 606 (1982). "[B]efore . . . relieving an attorney from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent from a hearing, the trial court *must* inquire into the efforts made by counsel to contact the parent in order to ensure that the parent's rights are adequately protected." *In re D.E.G.*, 228 N.C. App. 381, 386–87, 747 S.E.2d 280, 284 (2013) (emphasis added). "This Court has a duty to ensure that [the parent] received a fair hearing, and we must adhere to our prior admonition that 'procedural safeguards . . . must be followed to ensure the "fundamental fairness" of termination proceedings.'" *In re C.D.H.*, 265 N.C. App. 609, 614, 829 S.E.2d 690, 694 (2019) (quoting *In re S.N.W.*, 204 N.C. App. 556, 561, 698 S.E.2d 76, 79 (2010)).

Here, the cold record is silent regarding the extent of communication between Respondent-Father and his trial counsel. The trial court's orders indicate that Respondent-Father was represented by the same attorney throughout the proceedings and was served with the juvenile petition and order for nonsecure

custody while incarcerated. Notice of the motion to terminate parental rights was served on trial counsel, not directly on Respondent-Father. The record does not indicate whether trial counsel informed Respondent-Father of the termination hearing or any other proceedings following the 12 May 2022 adjudication hearing. *See In re D.E.G.*, 228 N.C. App. at 386–87, 747 S.E.2d at 284.

Questions also remain as to whether trial counsel was aware of Respondent-Father's incarceration at the time of the termination hearing and whether trial counsel made any effort to facilitate Respondent-Father's presence or participation in the hearing. *See, e.g., Dunkley v. Shoemate*, 350 N.C. 573, 577–78, 515 S.E.2d 442, 445 (1999). ("[A] lawyer cannot properly represent a client with whom he has no contact."). Furthermore, the trial court made no findings addressing Respondent-Father's absence or trial counsel's efforts to facilitate his participation at the termination hearing. *See In re D.E.G.*, 228 N.C. App. at 386–87, 747 S.E.2d at 284; N.C. Gen. Stat. 7B-1109(b). While ineffective assistance is unlikely to exist when counsel's alleged deficiencies result from a respondent's own actions or inactions, *see Bishop*, 92 N.C. App. at 666–67, 375 S.E.2d at 679–80, the limited record before the Court must be further developed such that we can fully consider the reasons behind Respondent-Father's nonattendance and counsel's limited participation in the termination hearing, *see In re S.N.W.*, 204 N.C. App. 556, 559, 698 S.E.2d 76, 78 (2010).

On this record, we cannot ascertain whether Respondent-Father had any

meaningful contact with his attorney or if any efforts were made to secure his participation. Particularly in cases where a respondent is served through counsel, as here, the record must be developed further for an appellate court to assess whether the respondent received notice of the hearing or was provided the opportunity to assist in trial preparation. *See In re A.R.C.*, 265 N.C. App. 603, 607, 830 S.E.2d 1, 4 (2019) ("Because additional facts regarding the reasons behind counsel's actions are needed to resolve [the respondent's] claim that she was denied a fair hearing, the appropriate remedy is to remand to the trial court so that it may find those facts and make a determination as to the adequacy of counsel's representation.").

In sum, the cold record is insufficient to determine whether Respondent-Father received actual notice or an opportunity to participate at the termination hearing. Further development of the record is necessary to adequately consider Respondent-Father's IAC claim. Accordingly, we remand.

## V. Conclusion

The record before us raises questions as to whether Respondent-Father was afforded the proper process necessary to ensure his rights were protected during his termination of parental rights hearing. *See Kramer*, 455 U.S. at 753–54, 102 S. Ct. at 1394–95, 71 L. Ed. 2d at 606. Therefore, we remand for the trial court to develop the record and determine if Respondent-Father received IAC, making additional findings of fact and conclusions of law as necessary.

REMANDED.

Judges TYSON and MURRY concur.

Report per Rule 30(e).